639 F.2d 1197
 7 Bankr.Ct.Dec. 717
 In the Matter of U.S. GOLF CORPORATION, Bankrupt.
William V. NEVILLE, Jr., as Trustee for U.S. Golf
Corporation, Appellant,
v.
EUFAULA BANK & TRUST CO., and James D. Murphy, Jr. et al., Appellees.
 No. 78-3122.
 United States Court of Appeals,
Fifth Circuit.
 March 16, 1981.
 
 William V. Neville, Jr., pro se.
 Preston C. Clayton, Eufaula, Ala., for Eufaula Bank and Trust Co.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before TUTTLE, RANDALL and TATE, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 This appeal arises from a determination by a bankruptcy judge in the Middle District of Alabama of a legal fee sought by William V. Neville, Jr., an attorney for a trustee in bankruptcy in proceedings before that judge. Neville, contending that the fee was inadequate, appealed to the district court, which affirmed the decision of the bankruptcy judge. In this further appeal, Neville argues that the bankruptcy judge abused his discretion in two separate respects. First, he contends that the bankruptcy judge did not seriously apply the twelve factors set forth as guides to the judicial determination of attorneys fees in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Although the bankruptcy judge discussed these factors in his opinion, he limited the hourly rate to the maximum allowed under a local policy of the Middle District of Alabama for bankruptcy matters. The district court did not rely on this policy but did affirm on the basis of a general principle under the old Bankruptcy Act in favor of economical bankruptcy administration; Neville argues that this principle, as applied by the district court, also resulted in a failure to apply the Johnson factors. Second, Neville contends that the bankruptcy judge abused his discretion by reducing Neville's compensable hours by a substantial percentage without first explaining to him the reason for the proposed reductions so that he could specifically respond.
 
 
 2
 We hold that the bankruptcy judge did abuse his discretion by applying a maximum limit despite the favorable findings he had made of the Johnson factors; the district court also ignored the relevant Johnson findings by elevating the principle of economy to the exclusion of other considerations. We hold that the bankruptcy judge did not abuse his discretion by failing to confront Neville with the specific reason for disallowances, for Neville had the burden of establishing the value of his services and had an adequate evidentiary hearing at which to do so. Since an appellate court has the authority to award legal fees on its own, we have in the interests of judicial economy determined such fees in this case.
 
 I. THE FACTS
 
 3
 Neville was appointed as receiver for the U. S. Golf Corporation, a bankrupt, on February 27, 1975 in the Bankruptcy Court for the Middle District of Alabama. He was appointed as trustee for U. S. Golf on April 9, 1975, and as attorney for the trustee on April 23, 1975; Neville served as both trustee and attorney for the trustee for the duration of the bankruptcy proceedings.
 
 
 4
 As attorney for the trustee, Neville's services fell into four broad categories. First, he challenged a security interest held by Eufaula Bank & Trust Company in the personal property of U. S. Golf. The interest was attacked on a number of grounds, and was defeated because Eufaula Bank & Trust had not properly recorded a Uniform Commercial Code financing statement covering the property. The property was liquidated at auction and brought approximately $90,000 into the estate. Second, Neville filed a suit against Tri-City Golf Company on the basis of a contract between Tri-City and U. S. Golf. The case was prepared for trial but was settled for approximately $30,000. Third, Neville filed a preference suit against Eaton Corporation; this suit resulted in a payment from Eaton of almost $15,000, the full amount of the preference. These three actions, taken together, increased the estate by over $135,000; absent these recoveries, the estate would have totalled approximately $15,000. In the fourth place, Neville challenged a number of claims filed against the estate. Although he was unsuccessful in his challenge to a $300,000 claim held by Eufaula Bank & Trust, he succeeded in having a number of smaller claims entirely disallowed by the bankruptcy court, including a claim by Tennessee Investment Castings Company for approximately $45,000, and one by the Barber County Tax Collector for over $1,000. One individual's claim was reduced from $24,200 to $2,700, and another claim was reduced from over $60,000 to approximately $55,000. Altogether, Neville successfully challenged over $92,000 in claims against U. S. Golf; this amount reduced the total claims against the bankrupt estate by 21.77%.
 
 
 5
 U. S. Golf's primary creditor in bankruptcy was Eufaula Bank & Trust. As attorney for the trustee, one of Neville's most important tasks was to challenge the bank's claim (which amounted to 74% of the total sought by creditors) and to attack the bank's security interest in the personal property of U. S. Golf. Neville took on this responsibility despite the fact that Eufaula Bank & Trust is the largest bank in Eufaula, Alabama, the community in which Neville practices law, and despite the personal interest of certain of the bank's officers and directors who had guaranteed U. S. Golf's debt to the bank.
 
 
 6
 Following the due administration of the bankruptcy estate, Neville filed on February 21, 1977 an application for allowance of an attorneys fee in the amount of $36,464.44. Several creditors filed letters objecting to the proposed fee, and the bankruptcy judge held a hearing on Neville's application on March 21, 1977. At that time Neville submitted a written summary of time he had spent on the case, claiming a total of 582.75 hours of time expended in his role as attorney to the trustee. Neville also introduced the testimony of a bankruptcy lawyer from Montgomery, Alabama; that attorney testified that a reasonable rate for the services provided by Neville would be approximately $60 per hour, and that a reasonable fee in this case would lie between $29,940 and $31,700. On April 19, 1977, the bankruptcy judge issued a memorandum opinion and order in which he found that only 268.25 hours of Neville's time could be compensated as attorney time, and determined that Neville should be paid $30 per hour for out-of-court time and $50 per hour for in-court time. The bankruptcy judge set the attorneys fee at $8,750.
 
 
 7
 After this fee was approved by the district court, Neville filed a petition for rehearing in the bankruptcy court. The bankruptcy judge granted the petition and held an evidentiary hearing on May 27, 1977. Neville introduced the testimony of four Montgomery attorneys and affidavits from a number of other attorneys from Florida, Georgia and Alabama as to the reasonableness of the fee he had requested; the reasonable hourly rates suggested by these attorneys ranged from $40 to $60. Neville also submitted at this hearing a detailed personal resume and a sixty page time record setting forth his work in more detail than in his original presentation to the court. On December 12, 1977, the bankruptcy judge held an additional hearing, at which Eufaula Bank & Trust introduced the testimony of several lawyers from Eufaula, all of whom placed the usual hourly rate for comparable work in that town at some point between $40 and $50. On May 11, 1978, the bankruptcy judge issued a second order setting an attorneys fee for Neville. In this order the judge increased Neville's compensable time to 310 hours of out-of-court time and 16 hours of in-court time. The judge did not change his initial conclusion as to hourly rates, however, and awarded a total attorneys fee of only $10,100 to Neville. The judge added a fee of $1,643.97 for Neville's service as receiver and a fee of $1,918.97 for his service as trustee. Neville's total compensation, therefore, was $13,662.94. The district court upheld this award on August 11, 1978.
 
 
 8
 II. THE LEGAL FRAMEWORK: DETERMINING ATTORNEYS FEES IN
 
 BANKRUPTCY PROCEEDINGS
 
 9
 Our analysis of attorneys fees in bankruptcy proceedings begins with In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). We explained in First Colonial that bankruptcy judges have wide discretion in determining attorneys fees in proceedings before them. We will reverse such a determination on appeal only if the bankruptcy judge abused his discretion, and such an abuse can occur only when the bankruptcy judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous. Id. at 1298. However, we adopted in First Colonial a specific set of factors which must be considered by the bankruptcy judge before he determines an award of attorneys fees. These factors provide an objective basis for awards of attorneys fees and make possible a meaningful judicial review of the bankruptcy judge's determination. In particular, we extended to bankruptcy proceedings the analysis which we had required of the district court in a civil rights action in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Accordingly, a bankruptcy judge must consider the following twelve factors before he awards an attorneys fee:
 
 
 10
 (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.
 
 
 11
 In re First Colonial Corp., 544 F.2d at 1298-99, quoting from Johnson v. Georgia Highway Express, Inc., 488 F.2d at 717-19.
 
 
 12
 In order to apply these factors in the bankruptcy context, we explained in First Colonial that two additional considerations must enter the analysis. First, bankruptcy estates are to be administered as economically as possible. While this does not mean that bankruptcy judges should be "parsimonious" in the awarding of attorneys fees, it does mean that awards should be made "at the lower end of the spectrum of reasonableness." 544 F.2d at 1299. We note that this consideration does not affect the determination of attorneys fees under the new Bankruptcy Act, 11 U.S.C. § 101 et seq., for the Bankruptcy Reform Act of 1978 specifically provides that compensation for attorneys shall be based, inter alia, on "the cost of comparable services other than in a case under this title." 11 U.S.C. § 330(a)(1) (1979). However, this case was filed before October 1, 1979, and is therefore unaffected by provisions of the new Bankruptcy Act. Bankruptcy Reform Act of 1978, Pub.L. 95-598, § 403(a), 92 Stat. 2683 (1978). A second consideration which must enter an analysis of attorneys fees in bankruptcy proceedings is the policy against duplicative fees and compensation for non-legal services. An attorney may not be compensated for tasks which are properly the responsibility of the trustee or receiver, and may not be compensated at a rate applicable to legal work for tasks which properly could have been performed by less costly non-legal employees. 544 F.2d at 1299.
 
 
 13
 We also set out in First Colonial the proper procedure to be employed by the bankruptcy judge to consider these factors and to determine the appropriate attorneys fees. First, the judge must determine the "nature and extent of services supplied by the attorney." Id. The attorney seeking fees should file a specific written statement and description of his hours worked, and the judge must hold an evidentiary hearing if there are any disputed factual issues. Second, the judge must "assess the value of those services." Id. at 1300. Because judges are themselves familiar with legal fees, expert testimony is not required, although it may of course be taken. Finally, the judge must explain the basis of his award. In particular, he must briefly describe his findings of fact and explain how an analysis of the appropriate factors has led to his decision. Significantly, the judge must indicate how each of the twelve Johnson factors affected his decision. Id. See Fain v. Caddo Parish Police Jury, 564 F.2d 707, 709 (5th Cir. 1977).
 
 
 14
 III. THE APPLICATION OF THE LEGAL FRAMEWORK: THE
 
 
 15
 DETERMINATION MADE BY THE BANKRUPTCY JUDGE IN THIS CASE
 
 
 16
 In accordance with the procedure set out in First Colonial, the bankruptcy judge held an evidentiary hearing on Neville's original application and held two additional evidentiary hearings after he granted Neville's petition for rehearing. The court heard a number of witnesses as to the reasonableness of the hourly rate requested by Neville. Although the judge did not initially hear evidence on the nature and extent of the hours he found to be compensable, Neville did testify on rehearing in connection with the detailed explanation of his hours which he submitted at that time.
 
 
 17
 The judge explicitly considered the Johnson factors both in his original order setting Neville's fee and in his subsequent order on rehearing. His analysis of these factors is summarized here:
 
 
 18
 (1) The time and labor required. In his original order the bankruptcy judge reduced Neville's time from 482.75 to 268.25 compensable hours. The judge explained only that the disallowed hours involved "duties which Trustee should have performed or would have performed ordinarily." Order Setting Fee for Attorney for Trustee (hereinafter Original Order), April 19, 1977, at 8. On rehearing, however, the bankruptcy judge explained his determination in somewhat more detail. In particular, he noted the allowable time in the margins of Neville's detailed summary of his hours, thereby making it possible to determine which precise items were disallowed. Opinion on Rehearing Fee for Attorney for Receiver-Trustee (hereinafter Rehearing Order), May 11, 1978, at Appendix A. The judge also explained in general terms the basis for his determinations of allowable hours. Rather than relying on the distinction between attorney time and trustee time, however, the judge stated in his Rehearing Order that all of the disallowed hours constituted work that should have been done in less time or by non-legal employees:
 
 
 19
 In Johnson ..., the instruction is that the trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. It is appropriate also to distinguish between legal work in the strict sense and investigation, clerical work, compilation of facts and statistics, and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.
 
 
 20
 Rehearing Order at 4. The judge disallowed fewer hours in his Rehearing Order than he had in his Original Order. Adding together the individual allowable items on Neville's time sheet, the judge found total compensable attorney time to be 310 hours for out-of-court work and 16 hours for in-court work.
 
 
 21
 (2) The novelty and difficulty of the question. In his Original Order, the bankruptcy judge examined all four major areas of legal work. He did not discuss the novelty or difficulty of the attack on Eufaula Bank & Trust's security interest or of the suit against Tri-City Golf, but he did find that both the attack on claims filed against the estate and the preference suit against Eaton involved novel and difficult questions. In particular, he found that Neville's challenges to claims against the estate "involved rather intricate questions of law" and that the suit against Eaton involved a "difficult question or case for proof" in which "(k)nowledge of insolvency required extensive discovery and preparation for proof." Original Order at 3-4. The discussion is considerably briefer, however, in the Rehearing Order, in which the judge stated only that while the cases tried by Neville were "admittedly difficult," they were not "of first impression" and did not "make any new law." Rehearing Order at 6.
 
 
 22
 (3) The skill required to perform the legal services properly. In his Original Order, the bankruptcy judge found that "exceptional skill" was required in most of the tasks involved in this case. In particular, the challenge to Eufaula Bank & Trust's security interest was "difficult of proof," involving dealings between two corporations (the bank and U. S. Golf) which were closely allied. The suit against Eaton was "complex in requiring the proof of all of the elements of a preference under the Bankruptcy Act." Original Order at 4-5. Again, the discussion is considerably briefer in the Rehearing Order; there the judge stated only that "there is nothing wanting in the work product, preparation, and general ability of Mr. Neville" and that Neville "was meticulous in his pleadings and detailed in his proof." Rehearing Order at 7.
 
 
 23
 (4) The preclusion of other employment by acceptance of this employment. The judge found no evidence that Neville had to forfeit other employment to accept this case.
 
 
 24
 (5) The customary fee. In his Original Order, the bankruptcy judge had only one witness on which to rely; that witness testified to a reasonable rate of $60 per hour. In the Rehearing Order, however, the judge relied on a number of witnesses; their testimony ranged between $40 and $60 per hour, with the testimony of attorneys from Eufaula falling between $40 and $50 per hour. The judge included an appendix setting forth the rates suggested by the various witnesses, and noted that Eufaula Bank & Trust paid its attorneys $10,000 (at a rate of $40 per hour) for its defense of Neville's attack on its security interest. After discounting the testimony of attorneys who did not practice in Eufaula, the judge then concluded that "(t)he testimony supports a finding that $40.00 per hour was in 1975 a standard per-hour fee charged by attorneys in active practice for more than fifteen years for work not contingent in nature in Eufaula, Alabama." Rehearing Order at 8.
 
 
 25
 (6) Whether the fee is fixed or contingent. The bankruptcy judge noted that there was no agreement allowing Neville a contingency fee; as this is a bankruptcy proceeding, the fee is to be fixed by the court.
 
 
 26
 (7) Time limitations imposed by the client or other circumstances. The judge found no time limitations on Neville's work in this case.
 
 
 27
 (8) The amount involved and the results obtained. The bankruptcy judge found that Neville had recovered $138,085.71 for the estate via his attack on Eufaula Bank & Trust's security interest, the suit against Tri-City Golf and the suit against Eaton. This amount increased the bankrupt estate from approximately $15,000 to over $150,000. He also found that Neville had successfully defeated $92,692.75 in claims against the estate. This amount decreased claims from approximately $450,000 to approximately $360,000.[1] Rehearing Order at 9.
 
 
 28
 (9) The experience, reputation, and ability of the attorney. The bankruptcy judge's Rehearing Order describes Neville as "an accomplished attorney" and finds him to be "aggressive, public spirited and an attorney of wide-ranging abilities." The judge noted that Neville has served in the Alabama legislature and has practiced law for seventeen years, and recalled testimony relating to fees which "without exception made reference to the superior ability and reputation of Mr. Neville in his community as an attorney and as a citizen." Id. at 10.
 
 
 29
 (10) The undesirability of the case. The bankruptcy judge emphasized the undesirability of this case to Neville in both orders. Neville was required to attack the claim and security interest of the largest bank in the town in which he practices law, under circumstances which involved some of the bank's officers and directors personally. The judge noted that both a bank director and the attorney for the bank had "demonstrated in court from time to time an animus toward Mr. Neville personally, directly traceable to Mr. Neville's attack upon the Eufaula Bank's security interests in this case." Id. at 10-11. Although the judge could not say precisely what effect this would have on Neville's law practice, he did state that "(t)hese men, influential in Eufaula, Alabama, in business and banking, will undoubtedly have an adverse effect upon Mr. Neville's practice in that community." Id.
 
 
 30
 (11) The nature and length of the professional relationship with the client. The bankruptcy judge found that Neville had not represented U.S. Golf previously to these bankruptcy proceedings.
 
 
 31
 (12) Awards in similar cases. The bankruptcy judge referred to a number of cases from the Fifth and Nine Circuits in which hourly rates for legal services varied from $25 to $120. He paid particular notice to the attorneys fee in Rainey v. Jackson State College, 551 F.2d 672 (5th Cir. 1977), in which this court approved an award of $35 per hour in a civil rights case arising in the Southern District of Mississippi. After citing this case, the judge explained:
 
 
 32
 Fees of course must be adjusted upward since 1973. In this case a mean fee, based upon an examination of more recent cases decided in the Fifth Circuit would be $40.00 per hour in the lower end of the spectrum of reasonableness.
 
 
 33
 Rehearing Order at 11.
 
 
 34
 Despite the finding under the twelfth factor that "a mean fee ... would be $40.00 per hour in the lower end of the spectrum of reasonableness," and despite the finding under the fifth factor that "$40.00 per hour was in 1975 a standard per-hour fee charged by attorneys in active practice for more than fifteen years for work not contingent in nature in Eufaula, Alabama," the bankruptcy judge decided to award $30 per hour for out-of-court time and $50 per hour for in-court time. He explained this determination as follows:
 
 
 35
 In computing the fee which Mr. Neville as attorney for trustee is entitled to receive in this proceeding, however, it has been the policy of the District Court for the Middle District of Alabama in bankruptcy, that a fee of $50.00 per hour is a maximum that should be allowed in a bankruptcy case for actual court time. Not over $30.00 an hour may be allowed other time the attorney expends, and this includes preparation for Court time.
 
 
 36
 Rehearing Order at 12. It would appear, therefore, that the basis of the bankruptcy court's determination of a reasonable hourly rate is a standard maximum applied in the Middle District of Alabama to all bankruptcy cases, despite the bankruptcy judge's analysis of the Johnson factors.
 
 
 37
 Although the district court affirmed the bankruptcy judge's determination of Neville's attorneys fees, it does not seem to have relied on the policy employed by the Middle District of Alabama. Instead, the court referred to the first consideration which First Colonial explains must be added to the Johnson analysis. As the district court states:
 
 
 38
 This Court has reviewed the findings made by the Referee and finds that they are supported by the evidence presented .... In reaching this conclusion, this Court considers that an award of attorney's fee in a bankruptcy proceeding should be set at an amount which is "at the lower end of the spectrum of reasonableness", and since attorneys assisting the trustee in the administration of a bankruptcy estate are acting, not as private persons but, as officers of the Court, they should not expect to be compensated as generously for their services as they might be were they privately employed.
 
 
 39
 Memorandum Opinion of the District Court, August 11, 1978, at 1-2 (citations omitted). It would appear, therefore, that the district court accepted the bankruptcy judge's findings that "a mean fee" or "a standard per-hour fee" would be $40, but affirmed the bankruptcy judge's reduction to $30 because of the general policy under the old Bankruptcy Act in favor of "economical" attorneys fees.[2]
 
 
 40
 After determining the allowable fee for both in-court and out-of-court time, the bankruptcy judge multiplied those figures by the number of allowable hours in each category, as determined in its discussion of the first Johnson factor ("time and labor required"). The district court made no change in this analysis, and affirmed the bankruptcy judge's award of $10,100 in attorneys fees.
 
 
 41
 IV. DID THE BANKRUPTCY JUDGE ABUSE HIS DISCRETION?
 
 
 42
 A. In the Determination of a Reasonable Hourly Rate
 
 
 43
 Each of the Johnson factors which the bankruptcy judge found relevant in this case weighs in favor of a higher attorneys fee. The judge found that some of the questions involved in litigation brought by Neville were difficult; that certain of these suits required a lawyer of "exceptional skill;" that a customary fee in comparable work in Eufaula at the relevant time was $40 per hour; that the results obtained were significant (over $135,000 in assets recovered and over $92,000 in claims defeated); that Neville was "an accomplished attorney;" that this suit was most undesirable, requiring Neville to challenge the largest bank in the town in which he practices, despite the personal interest of certain officers and directors of that bank; and that an award in a closely analogous previously decided case was $40 per hour.
 
 
 44
 No one of these factors, taken alone, would lead us to the conclusion that the bankruptcy judge abused his discretion. Each of the Johnson factors no matter how favorable or persuasive must be evaluated in light of the other factors and considerations, and a genuine balance must be struck by the bankruptcy judge. In this case, however, each of the relevant Johnson factors cuts in Neville's favor. The judge systematically discussed each of these factors finding most of them favorable to Neville and none of them unfavorable and then awarded him an hourly fee substantially below the amount he found to be reasonable for comparable work.
 
 
 45
 The basis of this reduction in hourly rates (in the bankruptcy judge's Rehearing Order) is a "policy of the District Court for the Middle District of Alabama in bankruptcy" which limits attorneys fees to $30 per hour for out-of-court time and $50 per hour for in-court time. Regardless of the balance struck through a genuine examination of the Johnson factors, this policy sets an absolute limit to attorneys fees in bankruptcy cases. As such, the policy serves to override the Johnson analysis and is therefore fundamentally inconsistent with the proper procedure spelled out in In re First Colonial Corp. of America, supra. We have on two recent occasions reversed an order setting attorneys fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (1976), precisely because such fees were set in accordance with maximum limits of the district court rather than as a result of a balancing of all of the Johnson factors. Neely v. City of Grenada, 624 F.2d 547 (5th Cir. 1980); Knighton v. Watkins, 616 F.2d 795 (5th Cir. 1980). In both cases we emphasized the incompatibility of locally set maximums with the Johnson analysis. As we explained in Neely:
 
 
 46
 To begin with a perceived local maximum fee, then find that the other Johnson factors favor an award of substantial attorney's fees, and then conclude that the local rate should be the fee, amounts to a failure to consider the Johnson factors other than the local rates.
 
 
 47
 624 F.2d at 549. Although both Neely and Knighton arose from civil rights actions rather than bankruptcy proceedings, we think the principle is equally applicable here. It is simply not possible to seriously weigh the Johnson factors in the face of an absolute maximum fee. Therefore the bankruptcy judge abused his discretion insofar as he relied on the district court's maximum fee policy.
 
 
 48
 The district court, however, did not rely on this maximum fee. Instead, the court emphasized the policy of economically administering bankruptcy estates and concluded that the fee should be set "at the lower end of the spectrum of reasonableness." This policy is indeed to be considered in determining a legal fee under the old Bankruptcy Act. In re First Colonial Corp. of America, supra, 544 F.2d at 1299. However, the relevance of this consideration does not authorize the bankruptcy judge to ignore the impact of the Johnson factors. All else being equal, an attorneys fee should be set at the lower end of the spectrum of reasonableness in an action arising under the old Bankruptcy Act; but when each of the relevant Johnson factors weighs in favor of the attorney seeking fees, all else is not equal. Economy is one more consideration, added in bankruptcy cases to the twelve factors already spelled out in Johnson; economy may not serve to displace the Johnson factors.
 
 
 49
 We recognize that the bankruptcy judge carefully spelled out and discussed each of the Johnson factors before he applied the absolute maximum (or, as did the district court, the principle of economy in bankruptcy proceedings). But the bankruptcy judge does not fulfill the role required of him by First Colonial merely by discussing the Johnson factors; he must apply the various factors and explain how his interpretation of the factors led to his conclusion. As we explained in Davis v. Fletcher, 598 F.2d 469 (5th Cir. 1979):
 
 
 50
 What we require is not a meaningless exercise in parroting and answering each of Johnson's twelve criteria, but some assurance that the court has arrived at a just compensation based upon appropriate standards.
 
 
 51
 598 F.2d at 470-71. See Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 582-83 (5th Cir. 1980). In this case we think it clear that the bankruptcy judge has not properly applied the appropriate standards. He found that $40 per hour was a reasonable fee in comparable cases and then reduced that rate to $30 despite the strong concurrence of the Johnson factors in favor of a greater fee. Whether that reduction occurred because of a district court policy, or instead because of a slavish adherence to the principle of economy, the bankruptcy judge seems to have ignored the relevance of the Johnson factors in this case.
 
 
 52
 Since all the Johnson factors are adequately spelled out in the bankruptcy judge's two opinions, this court may determine on its own a reasonable hourly fee in this case. It has long been settled that appellate courts, like trial courts, are themselves experts as to the reasonableness of an attorneys fee, and that appellate courts may therefore set such fees themselves. E. g., In re TMT Trailer Ferry, Inc., 577 F.2d 1296, 1304 (5th Cir. 1978); Brown v. Culpepper, 561 F.2d 1177, on denial of rehearing from 559 F.2d 274 (5th Cir. 1977). We begin with the testimony before the bankruptcy court as to the reasonable hourly rate for comparable work in Eufaula at the time of these bankruptcy proceedings: each of the witnesses placed that rate at some point between $40 and $50. Along with this testimony, however, we must consider the various Johnson factors as well as the principle of economy in bankruptcy administration. Weighing these factors together, we conclude that Neville should be compensated at a rate of $45 per hour for his out-of-court time. We leave undisturbed the bankruptcy judge's decision to compensate in-court time at a rate of $50 per hour.
 
 B. In the Determination of Compensable Time
 
 53
 The bankruptcy judge reduced or eliminated a large portion of Neville's claimed compensable hours on the basis that much of the work should have been done in less time or by non-legal employees. Neville argues that the judge abused his discretion by disallowing particular hours on this basis without giving him an opportunity to respond. None of the creditors challenged any of the hours disallowed by the judge, and the judge did not state at any point before his decision his belief that much of the time was excessive or non- legal. Consequently, argues Neville, he had no opportunity to explain to the judge why the specific items reduced or eliminated were reasonable uses of attorney time.
 
 
 54
 Neville was of course entitled to an evidentiary hearing on disputed factual issues pertaining to the nature and extent of his services. In re First Colonial Corp. of America, supra, at 1299-1300; see Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 169 (3d Cir. 1973). The judge did hold a hearing on May 27, 1977, and Neville testified at that time as to the reasonableness of the compensable time he claimed. Record at 79-114. However, the judge did not ask Neville to explain why any of his hours were necessary or why a non-legal employee could not have done the work. Neville contends that had he known the judge would reduce or disallow particular hours on this basis, he could have adequately justified those hours to the judge. Neville argues, in effect, that he was entitled to know the specific basis of the judge's objections to his claimed hours so that he might specifically respond during the evidentiary hearing.
 
 
 55
 We disagree. The burden is on the attorney claiming a fee in a bankruptcy proceeding to establish the value of his services. See Woods v. City National Bank & Trust Co., 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941); In re R. Hoe & Co., 471 F.Supp. 493, 500 (S.D.N.Y.1978). Since an attorney may be awarded fees in a bankruptcy proceeding only to the extent that the hours he claims are indeed compensable as valid attorney time, it is incumbent upon the attorney to demonstrate that his hours represent work that was reasonably necessary and could not have been done by non-legal employees. In this case Neville was afforded an evidentiary hearing at which to justify the hours he listed on his detailed time sheet. The judge reviewed the time sheet item by item and reduced or eliminated hours which he felt had not been adequately justified, and the judge explained in general terms the basis of his decision.
 
 
 56
 We think the better practice would have been for the judge to confront the attorney at least with his general objections to the attorney's claimed hours, and perhaps with particular items the judge thought unnecessary or non-legal. In this way the judge could have focused the evidentiary hearing on the specific deficiencies in the attorney's application, and might have facilitated a more informed determination of the attorneys fee. However, the failure to follow this practice is not an adequate ground for reversal. We have long recognized the importance of the bankruptcy judge's closeness to issues raised in an application for attorneys fees; the bankruptcy judge has not only presided over the evidentiary hearing, but has also had the opportunity to observe the performance of the attorney throughout his employment before the bankruptcy court. Consequently, a bankruptcy judge has wide discretion in the awarding of attorneys fees. See, e. g., In re First Colonial Corp. of America, supra, at 1298. Since the burden was on Neville to demonstrate that the hours he spent on this case were reasonable uses of attorney time, and since Neville was afforded an evidentiary hearing at which to establish this fact, we conclude that the judge committed no abuse of discretion by failing to inform Neville in advance of or during the evidentiary hearing of the specific grounds on which he ultimately relied for the disallowance of hours.
 
 V. OUR DETERMINATION OF NEVILLE'S FEES
 
 57
 Applying our determination of a reasonable hourly rate in this case, see Part IV(A) of this opinion, to the bankruptcy judge's determination of compensable time, see Part IV(B) of this opinion, we compute Neville's legal fee for work done during the bankruptcy proceedings. To this we add a legal fee for the prosecution of this appeal. In the interests of judicial economy, see In re Robinson, 634 F.2d 258 (5th Cir. 1981); Johnson v. Combs, 471 F.2d 84 (5th Cir. 1972), cert. denied, 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973), we have ourselves set this amount at $1,000. Neville's total legal fee, therefore, is as follows:
 
 
 58
 Neville is also entitled, of course, to the fees already determined by the bankruptcy judge for his service as receiver and as trustee in bankruptcy. We remand this case to the district court for entry of an order consistent with this opinion.
 
 
 59
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 The judge did not discuss the precise effect these changes would have, after the expenses of administration, on the dividend actually received by the unsecured creditors. We note, however, that available assets as a percentage of total claims increased from approximately three per cent to well over thirty per cent. While some of this increase will be consumed by the costs of administration, it would appear that the unsecured creditors will have received a substantially enhanced dividend as a result of the suits brought and claims defended by Neville
 
 
 [2]
 Although the bankruptcy judge relied in his Rehearing Order exclusively on the maximum fee policy of the Middle District of Alabama, in his Original Order he relied instead on the rationale later used by the district court, i. e., that bankruptcy attorneys should be paid "at the lower end of the spectrum of reasonableness." Original Order at 8