**In re BEVERLY MANUFACTURING CORP., Debtor.**

**Jeanette E. TAVORMINA, as Trustee, Plaintiff,**

v.

**Robert BRAKE, Defendant.**

**Bankruptcy No. 80–00079–BKC–TCB. Adv. No. 82–1258–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

March 30, 1983.

**514**

Robert Brake, defendant, pro se.

Barbara Phillips, Miami, for trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee's complaint has three counts, seeking (1) the turnover of four stock certificates in Spray Painting Co., a Florida corporation, (2) a determination of the validity and amount of defendant's lien if any in the certificates, and (3) leave to sell the certificates free of liens, the defendant's lien to attach to the proceeds.

Defendant, an attorney, holds a total of 172,243 shares (of which this case involves only 13 percent) in the names of some 20 clients. By a Motion for Waiver of Claim to Stock in Kind (C.P. No. 8) he seeks leave to sell all stock and settle two lawsuits against the purchaser for $215,303 (or $1.25 per share). Following notice to all affected parties, the motion was heard on March 17 and, without objection from these parties, has been granted by separate order. The proceeds of the sale are held by another bankruptcy trustee subject to the orders of this court. This renders moot the trustee's count 3, because the offer she had was for only 61¢ per share.

Two issues remain to be resolved: (a) the trustee's claim if any to the $28,075 value of the four certificates, which are in the names of four persons who are not parties, and (b) the validity and amount of defendant's lien in the proceeds. The matter was tried on March 17.

In November, 1977, defendant was given the four stock certificates and was instructed by W.S. Barkett, who had been the debtor's president since 1961, to establish title to the stock in Barkett and to sell the stock. Defendant had then been actively representing the debtor for at least five years. It was orally agreed that defendant would be paid half the sale price plus reimbursement of all costs. Defendant has held the certificates continuously since then.

The defendant and Barkett have each also testified that Barkett assigned defendant his remaining half interest in the stock in payment for services performed and to be performed by defendant for the debtor corporation. As of that date, the outstanding billings for services to the debtor were $28,474.

Although Barkett has testified that the stock certificates are his, because he loaned the debtor corporation the funds used to acquire the certificates, I find that the debtor corporation was and is the equitable owner of all the shares.

The certificates were issued by the predecessor of The Hotsy Corporation as a stock dividend to all stockholders of record. The four persons whose names appear on these certificates had obtained their stock through settlement of litigation. Barkett, using the debtor's funds had paid the four persons in full for their interest and the attorney who held the certificates in escrow pending payment, delivered the certificates to Barkett. I find that Barkett took possession of the certificates as the debtor's president and held them in that fiduciary capacity until they were delivered to defendant. Barkett's claim for the monies advanced by

him, if he has any, is a general, unsecured claim against the debtor. There is no basis in this record to support his contention that the corporation assigned this or any other property to him on account of those advances. Indeed, virtually every indication in this record (other than Barkett's unsupported testimony) points to corporate ownership of the stock.

When Barkett employed defendant, he did so on behalf of the corporation. The subsequent pleadings were filed for the corporation, not Barkett. The subsequent bankruptcy did not terminate that contract. As was held in *Matter of Innkeepers of New Castle, Inc.*, 7 Cir. 1982, 671 F.2d 221, 230.

"Thus, '[w]here an attorney [is retained to seek a recovery in pending litigation] on behalf of a [client who becomes a bankrupt midstream], the filing of a petition in bankruptcy does not terminate his employment nor stay the pending [litigation].' . . . Where the trustee or debtor in possession elects not to take over the litigation, thereby avoiding subjecting the estate to any risk of loss, the pre-bankruptcy attorney fee contract remains in effect. . . .

"Thus, when the Bankruptcy Court sequestered the proceeds of the recovery on Innkeepers' chose in action, those proceeds were encumbered with the perfected attorney's lien charges for Maley's services pursuant to his fully executed fee contract." 'Bankruptcy does not invalidate such liens.' . . ." (Omitting citations.)

The trustee argues that defendant's contract was executory and, therefore, must be deemed rejected when it was not assumed. 11 U.S.C. § 365(d)(1). In this instance, the existence of this contract was never disclosed and it would be completely inequitable to defeat defendant's charging and retaining liens on that account.

The trustee has also argued that the stipulated fee is excessive and that this court may reduce it. *Matter of TLC of Lake Wales, Inc.*, Bkrtcy.M.D.Fla.1981, 13

B.R. 593, 596 so holds without citing any precedent, but I disagree. As held in *Innkeepers of New Castle:*

"Maley's fee contract specifically stated that his fee was to be fifty percent of any net recovery. It was, therefore, error to use a 'reasonable fee' standard in lieu of the valid fee contract as the basis for determining the extent of Maley's lien." 671 F.2d at 230.

In any event, defendant would be entitled to reasonable compensation for the benefit received by this estate from his services. 12 *Collier on Bankruptcy* (14th ed.) ¶ 219.04[1]. In this instance, half the recovery is not unreasonable in view of the contingency and the protracted litigation. Some 19 other clients contracted at arm's length for the same services at the same fee.

We turn next to defendant's claim of the assignment of the remaining half interest in the stock, given him in payment for other pre-petition services furnished the debtor. I reject that claim. Although there is testimony that the stock was assigned to defendant before bankruptcy, I reject that testimony because the written assignment (Ex. 1), prepared by defendant, is dated December 3, 1980, a year after bankruptcy, January 25, 1980. The purported assignment on account of a pre-petition account is a nullity. § 362(a)(3) and § 541(a)(1).

As a part of his contract with respect to the stock, defendant is also entitled to recover the expenses advanced by him in that connection. He has advanced or incurred a total of $14,077.86 on behalf of 172,243 shares. I have disregarded a disputed claim by an appraiser employed by defendant. Defendant should have resolved that expense before this trial if he does not expect to bear that expense himself. Allocating the total expense to the 22,460 shares at issue here, this represents $1,835.71 advanced on behalf of this estate. Defendant is entitled to reimbursement in that sum, together with payment of his fee, $14,037.50, as a first lien against the proceeds of the sale of the stock.

As is required by B.R. 921(a), a separate judgment will so provide. Each party will bear its own costs.