841 F.2d 365
 17 Bankr.Ct.Dec. 849, Bankr. L. Rep. P 72,256
 In re BEVERLY MANUFACTURING CORP., Debtor.
Robert BRAKE, Esq., Plaintiff-Appellant,
v.
Jeanette TAVORMINA, Trustee, Defendant-Appellee.
In re BEVERLY MANUFACTURING CORPORATION, Debtor.
Robert BRAKE, Plaintiff-Appellant,
v.
Jeanette E. TAVORMINA, as Trustee of Beverly Manufacturing
Corporation, Defendant-Appellee.
 Nos. 86-5719, 87-5187.
 United States Court of Appeals,
Eleventh Circuit.
 March 28, 1988.
 
 Robert M. Brake, Coral Gables, Fla., pro se.
 Barbara L. Phillips, Phillips & Phillips, P.A., Miami, Fla., for defendant-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 These two consolidated appeals arise out of the same bankruptcy proceeding. In No. 87-5187, Robert Brake, attorney for Beverly Manufacturing Corporation ("debtor"), appeals from an order of the district court denying his claim to a retaining lien. In No. 86-5719, Brake appeals from a denial of his petition for attorney's fees. In both cases, we affirm.
 
 
 2
 Brake represented the debtor on various legal matters from approximately 1972. On January 25, 1980, the debtor filed for corporate reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 1101 et seq. Prior to the filing of this petition, Brake rendered services to the debtor with respect to the transfer of title of four stock certificates in the Hotsy Corporation ("Hotsy"). In order to transfer title, Brake had to bring suit to quiet title to the stock. Brake and the debtor agreed that Brake would be paid 50% of the sale price of the Hotsy stock as a fee and that the remaining 50% (less costs of the litigation) would be applied to the running account between Brake and the debtor. At the time of the bankruptcy, the debtor owed Brake $28,474.02. The Hotsy litigation was eventually settled when Hotsy agreed to buy back its stock.
 
 
 3
 On January 7, 1981, the bankruptcy court converted the proceedings to one under Chapter 7, 11 U.S.C. Secs. 701 et seq., and appointed the appellee, Jeanette E. Tavormina, as liquidating trustee. All the assets of the debtor were subsequently sold, producing an estate of $68,613.00. Among the property sold, by consent of all parties, was the Hotsy stock which was transferred to Hotsy for $28,075.00.
 
 
 4
 Case No. 87-5187 was commenced on December 23, 1982, when Tavormina instituted an adversary proceeding against Brake seeking (1) a return of the Hotsy stock certificates or its equivalent monetary value, (2) a determination of the validity of Brake's liens, if any, in the certificates, and (3) leave to sell the Hotsy certificates free of liens. Brake claimed to have a charging and retaining lien in the stock for fees and costs in connection with the Hotsy litigation and a retaining lien for fees and costs in connection with other pre-bankruptcy legal matters.
 
 
 5
 On March 17, 1983, the matter was tried before the bankruptcy judge.[1] Both Brake and the debtor's president, William Barkett, testified that Barkett gave Brake the stock certificates in November of 1977 and that he held them until 1983, when Hotsy purchased the shares in settlement of the litigation. Brake also introduced into evidence two letters he wrote to Brian Snow, an attorney, in December of 1977 and January of 1978. In both letters Brake related to Snow that he had been given the stock certificates by the debtor and that the certificates were in his possession. There was also evidence that Barkett had formally assigned the stock to Brake after the filing of the bankruptcy petition.
 
 
 6
 The debtor's bankruptcy petition and schedules, prepared by Brake, stated that no property in which the debtor had an interest was in the hands of third parties and that the Hotsy stock was the personal property of the debtor. Barkett signed the petition and schedules under oath. When questioned about the inconsistency between his testimony that he gave the stock to Brake in 1977 and the statement in the schedule that none of the debtor's property was in the hands of third persons at the time the Chapter 11 petition was filed, Barkett stated that he did not disclose Brake's possession of the stock because he "didn't think it was necessary ... it was already given away before the petition was filed." Barkett further testified that although he provided the information for preparation of the schedules, he had not read the schedules when he signed them. He also said that he had formally assigned the stock to Brake after the bankruptcy filing "just ... to make it legal.... [The transfer] was legal before, but [Brake] just wanted it in writing, I assume."
 
 
 7
 In a memorandum decision dated March 30, 1983, the bankruptcy judge found that Brake "was given the four stock certificates" in November, 1977 and told by Barkett to "establish title to the stock." In re Beverly Manufacturing Corporation, 29 B.R. 513, 514 (Bkrtcy.S.D.Fla.1983). The court awarded Brake expenses ($1,835.71) and half of the proceeds from the sale of the stock ($14,037.50) as payment for his services in the Hotsy litigation. The judge, however, denied Brake's claim for an attorney's retaining lien on the remaining half of the stock proceeds as payment for his pre-bankruptcy services because he found that the stock was not assigned to Brake until after the Chapter 11 petition was filed. Id.
 
 
 8
 Brake filed a motion for a rehearing, contending that possession of the stock certificates prior to bankruptcy was sufficient to establish a valid retaining lien. A hearing on the motion was held on April 18, 1983. In his order on the motion, the bankruptcy judge reversed one of his earlier findings of fact:
 
 
 9
 In reviewing the Memorandum Decision I am now persuaded that a previous finding was in error. The finding relates to the critical issue of when defendant obtained possession of the stock. Relying on the evidence and agreement of defendant, I erroneously recited on page 2, paragraph 3:
 
 
 10
 'In November, 1977, defendant was given four stock certificates.... Defendant has held the certificates continuously since then.'
 
 
 11
 This statement of the facts is inconsistent with the facts upon which I relied in rejecting the claim based on an attorney's retaining lien. To correct this error, the paragraph is amended to delete the reference to November, 1977, as the date of transfer.
 
 
 12
 Both the defendant attorney and his client, Barkett, testified that the stock was delivered to defendant in November, 1977. The only document which would reflect transfer of possession is an assignment dated December 3, 1980, unquestionably after bankruptcy was filed on January 25, 1980.
 
 
 13
 The testimony that delivery of possession was three years prior to the assignment is inconsistent with the debtor's statements in its bankruptcy petition and schedules [that none of the debtor's property was in the hands of third parties.] ...
 
 
 14
 Under these circumstances, I find that the stock certificates were not surrendered to the defendant before bankruptcy ...
 
 
 15
 To establish a valid retaining lien, defendant has the burden to demonstrate that possession of the stock certificates was lawfully transferred to him before bankruptcy as an attorney representing the debtor. He has not. In these proceedings, defendant has been confronted with physical evidence to the contrary which he has failed to overcome.
 
 
 16
 Thus, the bankruptcy judge affirmed his prior ruling that Brake had not established a valid retaining lien. The district court affirmed.
 
 
 17
 The bankruptcy judge's finding that Brake did not have possession of the Hotsy stock certificates prior to the filing of the bankruptcy petition is a question of fact, and will not be overturned unless it is clearly erroneous. See Bank.R. 8013. A finding of fact is clearly erroneous only if, upon review of the entire evidence, we are left with the "definite and firm conviction that a mistake has been committed," United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948), or if the district court's version of the facts is implausible, Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 528 (1985). If the judge chooses between two permissible interpretations of the evidence, his finding is not clearly erroneous. United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150, 153 (1949).
 
 
 18
 Under Florida law, which both parties agree is controlling, an attorney must have possession of his client's property in order to establish a retaining lien:
 
 
 19
 [A]n attorney has a right to a retaining lien upon all of the client's property in the attorney's possession, including money collected for the client. Unlike a charging lien, a retaining lien covers the balance due for all legal work done on behalf of the client regardless of whether the property is related to the matter for which the money is owed to the attorney.
 
 
 20
 Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561 (Fla.1986) (citations omitted) (emphasis added). Brake had to have the stock in his possession prior to the filing of the Chapter 11 petition because such a petition acted as a stay of any act to obtain possession or control of property of the estate or to create, perfect or enforce any lien against the property of the estate. See 11 U.S.C. Sec. 362(a)(3)-(4).
 
 
 21
 Although Brake is correct in arguing that he did not need to obtain legal title to the stock to establish a valid retaining lien, he has not shown that he had possession of the stock in 1977. The testimony before the bankruptcy court as to when Brake received the stock was conflicting. The bankruptcy judge obviously did not give much weight to the testimony of Brake and Barkett concerning the time of the transfer, and relied on the statement sworn to by Barkett on the bankruptcy petition and schedules which were prepared by Brake. On review of the evidence, we cannot say that we are left with a firm and definite conviction that the bankruptcy court made a mistake in finding that Brake did not have the possession of the Hotsy stock prior to the bankruptcy proceeding so as to prove a valid retaining lien.
 
 
 22
 Brake also maintains that the district court abused its discretion when it failed to tax court costs against Tavormina pursuant to Bank.R. Sec. 7054(b). In addition to noting that the district court awarded Brake the sum of $1,835.71 as expenses, we see no abuse of discretion by the district court for failing to award Brake any additional money for other costs.
 
 
 23
 Case No. 86-5719 began on July 28, 1982, when Brake filed a petition for "reasonable" attorney's fees, expenses and costs in the bankruptcy proceedings. He did not specify a fee in his petition. He simply alleged that he had represented the debtor in Chapter 11 and Chapter 7 proceedings since August of 1979, and that he had "logged" seventy-seven hours on the case. Brake's petition also stated that the schedule of time attached to the petition "represent[ed] only time logged; there are many additional hours of time not logged on said schedules." The schedule of time spent on the case, which was attached to the petition, consisted of approximately eighty handwritten entries and three typed ones. Each one-line entry listed the date, a very brief description of the work, and the time spent on the task. The descriptions of the work were, to say the least, not very specific (e.g., "dictate letter," "call Barkett," "attend hearing," "phone call," "conference," "call from Chicago"). At least twenty of the entries lumped together several different services under one time frame (e.g., 2.8 hours for "conference; attend[ance at] hearing; research").
 
 
 24
 Following the final meeting of the creditors held on March 19, 1984, the bankruptcy court entered an order denying Brake's petition. The judge held that the petition did not comply with Bankruptcy Rule 2016 and this court's decision in In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).[2] The judge stated that Brake had already received "substantial compensation," a reference to the money Brake was awarded in Case No. 87-5187, and that neither the petition nor Brake's presentation at the hearing made it possible to determine precisely what services he had performed and what part, if any, of the time period covered by the petition remained uncompensated.
 
 
 25
 Brake then filed a "Motion for New Trial on Fee Application or Second Motion for Leave to Amend Fee Application." In this motion, Brake stated that (1) his original petition contained the time sheets; (2) the time sheets sufficiently detailed the work he had done; and (3) all the time referred to in the petition was spent on bankruptcy matters.
 
 
 26
 At a hearing on April 16, 1984, Brake told the bankruptcy judge that his previous compensation had not been for bankruptcy matters, and that his petition sought fees only for his work in the Chapter 11 proceedings. Brake then requested $8,000.00 for services in the bankruptcy case. He also stated that his petition for fees "set forth very vaguely what [he] had done," and that "timesheets [were] strictly for [his] own benefit and [were] handwritten and [were] difficult to read." He apologized to the court for having structured his petition in such a fashion, admitting that he "should have rather broken it down and typed it up."
 
 
 27
 On April 19, 1984, the bankruptcy judge denied Brake's motion. Brake appealed to the district court, which dismissed the appeal on timeliness grounds. This judgment was reversed and the case was remanded for consideration on the merits. Brake v. Tavormina, 778 F.2d 666 (11th Cir.1985). On remand, the district court, in an order dated August 21, 1986, affirmed the denial of Brake's petition. The district court held that burden of establishing an award of fees was on Brake and that the bankruptcy judge's finding that Brake's petition was inadequate was not clearly erroneous. The district court also found that Brake was not entitled to an evidentiary hearing under First Colonial because "he failed to conform to the threshold burden of filing a statement which 'recites the number of hours worked and contains a description of how each of those hours was spent.' " This appeal followed.
 
 
 28
 We begin by noting that an award or denial of attorney's fees in a bankruptcy proceeding will be reversed on appeal only if the bankruptcy judge abused his discretion. Such an abuse can occur only "when the bankruptcy judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." In re U.S. Golf Corp., 639 F.2d 1197, 1201 (5th Cir.1981).
 
 
 29
 The bankruptcy rules provide that persons seeking compensation for service from an estate "shall file with the court a detailed tatement of the (1) services rendered, time expended and expenses incurred and (2) the amounts requested." Bank.R. 2016(a) (emphasis added); see also 11 U.S.C. Sec. 329(a) (attorney must file statement of compensation paid or agreed to be paid).
 
 
 30
 In First Colonial, we set forth a three-step process for determining reasonable attorney's fees in bankruptcy cases:
 
 
 31
 In the first phase, the bankruptcy judge or district court must ascertain the nature and extent of the services supplied by the attorney. To this end, each attorney seeking compensation should be required to file a statement which recites the number of hours worked and contains a description of how each of those hours was spent. If there are disputed issues of fact, an evidentiary hearing must be held to facilitate their resolution. Once the nature and extent of the services rendered have been determined, the bankruptcy judge must assess the value of those services.
 
 
 32
 544 F.2d at 1299-1300 (citations omitted) (emphasis added). Two of the attorneys seeking fees in First Colonial filed insufficient documentation of the work they had performed. They had simply listed the number of hours they worked and the amount of compensation requested. Id. at 1300. We held that the bankruptcy judge had a duty to conduct an evidentiary hearing "on his own motion because the petitions for compensation did not adequately develop the factual basis for the awards [of fees to the attorneys]," and that he had erred in not conducting such a hearing. Id.
 
 
 33
 It is clear from the records and exhibits that Brake's petition for fees was inadequate. Although some of the items in the petition listed the name of an interested party in the proceedings or the general task, there was no indication of the specific nature of each service performed and its relation to the bankruptcy proceeding. In addition, several entries "lumped" together different services in one time frame. See In re Art Shirt Ltd., Inc., 30 B.R. 318 (Bkrtcy.E.D.Pa.1983); In re Doyle-Lunstra Sales Corp., 19 B.R. 1003 (D.S.D.1982); In re Hamilton Hardware, 11 B.R. 326 (Bkrtcy.E.D.Mich.1981). The bankruptcy judge's finding that Brake's petition was inadequate is, therefore, not clearly erroneous and will not be disturbed. See Bankr.R. 8013; Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1512, 84 L.Ed.2d at 528 (if district court's account of the evidence is plausible in light of the record viewed in its entirely, court of appeals may not reverse it even though it is convinced that it would have weighed the evidence differently); U.S. Gypsum Co., 333 U.S. at 395, 68 S.Ct. at 542, 92 L.Ed. at 766 (a finding is clearly erroneous if, upon review of the entire evidence, the appellate court is left with a firm and definite conviction that a mistake was made).
 
 
 34
 Brake's second argument, that the bankruptcy judge erred in failing to hold an evidentiary hearing as required by First Colonial, is more problematic. The bankruptcy judge considered Brake's petition for attorney's fees on two occasions: the March 19, 1984 hearing and the April 16, 1984 hearing on Brake's motion for new trial on his fee petition.[3] During the former, the discussion consisted of only eleven sentences of the transcript. However, the discussion during the hearing on Brake's motion for a new trial was more thorough. Brake presented his argument in support of the petition and was questioned by the judge about the amount of the fees. The district court apparently did not believe that either of those two hearings constituted an evidentiary hearing under First Colonial, because it held that Brake was not entitled to such a hearing.
 
 
 35
 We believe that the hearing on Brake's motion for a new trial did constitute an evidentiary hearing. Almost a month before that hearing, Brake was put on notice that his petition for fees was inadequate. At the March 19, 1984 meeting, Tavormina's counsel argued that the petition was not sufficiently detailed and did not ask for a specific monetary award. When his petition was denied and a hearing set on his motion for a new trial, Brake should have been prepared to present whatever evidence he thought necessary to support his petition. As we have previously said, "[t]he burden is on the attorney claiming a fee in a bankruptcy proceeding to establish the value of his services." In re U.S. Golf Corp., 639 F.2d 1197, 1201 (5th Cir.1981). Our holding in U.S. Golf Corp. is dispositive on the adequacy of the hearing:
 
 
 36
 We think the better practice would have been for the judge to confront the attorney at least with his general objections to the attorney's claimed hours, and perhaps with particular items the judge thought unnecessary or non-legal. In this way the judge could have focused the evidentiary hearing on the specific deficiencies in the attorney's application, and might have facilitated a more informed determination of the attorneys fee. However, the failure to follow this practice is not an adequate ground for reversal. We have long recognized the importance of the bankruptcy judge's closeness to issues raised in an application for attorneys fees; the bankruptcy judge has not only presided over the evidentiary hearing, but has also had the opportunity to observe the performance of the attorney throughout his employment before the bankruptcy court. Consequently, a bankruptcy judge has wide discretion in the awarding of attorneys fees. Since the burden was on Neville to demonstrate that the hours he spent on this case were reasonable uses of attorney time, and since Neville was afforded an evidentiary hearing at which to establish this fact, we conclude that the judge committed no abuse of discretion by failing to inform Neville in advance of or during the evidentiary hearing of the specific grounds on which he ultimately relied for the disallowance of hours.
 
 
 37
 639 F.2d at 1207-08 (citations omitted). Having determined that Brake's petition was inadequate and that an evidentiary hearing was held, we conclude that the bankruptcy judge did not abuse his discretion in denying Brake's application for attorney's fees.
 
 
 38
 For the foregoing reasons, the judgments of the district court in 86-5719 and 87-5187 are
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 On appeal, Brake challenges the jurisdiction of the bankruptcy court over this proceeding in light of Northern Pipeline Construction Co., Inc. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Brake's argument is without merit. The adversary complaint in this case sought to turn over property of the debtor's estate and to determine the validity and priority of Brake's purported retaining lien in the debtor's property. As such, the adversary complaint was a pure "core" proceeding under 28 U.S.C. Sec. 157(b)(2)(E), (k)
 
 
 [2]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), (en banc) this court adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [3]
 Despite arguing that the bankruptcy judge did not hold an evidentiary hearing, Brake labels the March 19 meeting "Hearing on Pet. for Atty. Fees," Appellant's Reply brief at 9, and further states that the bankruptcy court denied his motion for new trial on his fee petition "[a]fter a hearing." Appellant's brief at 11