**In re AUTO–TRAIN CORPORATION, Debtor.**

**Bankruptcy No. 80–00391.**

United States Bankruptcy Court, District of Columbia.

Nov. 3, 1981.

MEMORANDUM OPINION

(Fee Applications)

ROGER M. WHELAN, Bankruptcy Judge.

In this Chapter 11 Railroad Reorganization case, the trustee's counsel have filed their applications for compensation pursuant to 11 U.S.C. § 329. The fee applications request that the attorneys employed by the trustee, namely, the firms of Webster & Sheffield, and Docter, Docter & Salus, be paid for services rendered during the liquidation phase of the case. The fees presently under consideration only deal with the time period from May 4, 1981 to August 31, 1981.[1]

The fee applications fully comply with the requirements of 11 U.S.C. § 329. The

---

1. On May 29, 1981, by order of this Court, Auto-Train was ordered to liquidate the assets of their estate under Chapter 11 of the Code.

The Court order provided that the liquidation was *nunc pro tunc* to May 4, 1981, the first day after rail operations ceased.

time record documentations in support of the fee applications are presently held in camera pursuant to two orders of this Court. The time records contain very detailed documentation both as to the amount of time expended as well as to what work was accomplished during that time period. After an exhaustive review of these applications, as well as the time records, the Court finds that it cannot award the full amounts requested to the trustee's attorneys.

■ Bankruptcy judges have wide discretion in determining attorney's fees in cases before them. However, judges are bound to apply the proper legal standard and to follow certain procedures in the awarding of fees. *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). In determining what is a reasonable fee, many factors must be considered. In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), twelve factors are set forth for the judge to consider when awarding fees. Accordingly, this Court has weighed these factors in determining the appropriate fees in this case.

"(1) The time and labor required; . . .

(2) The novelty and difficulty of the questions; . . .

(3) The skill requisite to perform the legal service properly; . . .

(4) The preclusion of other employment by the attorney due to acceptance of the case; . . .

(5) The customary fee; . . .

(6) Whether the fee is fixed or contingent; . . .

(7) Time limitations imposed by the client or other circumstances; . . .

(8) The amount involved and the results obtained; . . .

(9) The experience, reputation and ability of the attorneys; . . .

(10) The "undesirability" of the case; . . .

(11) The nature and length of the professional relationship with the client; . . .

(12) Awards in similar cases."

*Johnson v. Georgia Highway Express, Inc.*, *supra*, 488 F.2d at 717–19.

In accordance with the requirements of the Johnson factors, this Court will briefly summarize its analysis of the twelve factors in relation to this case.

1. *The time and labor required.*

■ There is no question in this Court's mind that the attorneys for the trustee put many long and hard hours into this case. However, the Court has reduced both the hourly rates charged by the attorneys and the amount of billable hours. The Court did this for several reasons. First, some of the hours billed were for duties the trustee was required to perform under 11 U.S.C. § 704. For example, any time spent collecting and reducing to money the property of the estate was disallowed in its entirety as to the trustee's attorneys as it was already a duty of the trustee pursuant to 11 U.S.C. § 704(1). Further, time spent furnishing information about the estate and the estate's administration to any party in interest was disallowed as it was also a trustee's duty under 11 U.S.C. § 704(6) and therefore not subject to compensation under 11 U.S.C. § 330. While it is clear that under 11 U.S.C. § 330(a)(1) the Court may

"award to a trustee and to a professional person employed under section 327 or 1103 of this title . . .

(1) reasonable compensation for actual, necessary services rendered by such trustee . . . professional person, or attorney . . . and by any paraprofessional person employed by such trustee, professional person or attorney . . . based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title . . . .",

this does not mean that attorneys, professionals or paraprofessionals are entitled to be paid for services delegated to them by a trustee if it was already the duty of the trustee to perform them and he was already being reimbursed for them under 11 U.S.C.

§ 326.[2] An attorney may not be compensated for tasks which are properly the responsibility of the trustee ... and may not be compensated at a rate applicable to legal work for tasks which properly could have been performed by less costly non-legal employees. *In re U. S. Golf Corporation*, 639 F.2d 1197, 1201–1202 (5th Cir. 1981), citing *In re First Colonial Corp. of America*, 544 F.2d 1291, 1299 (5th Cir. 1977).

Second, this Court follows a two-tier rate system. The Court allowed billing at the full rate (the rate determined to be fair by this Court, not the amounts requested by the attorneys) for work that was done which involved complex, difficult or legal issues or work which required a legal background. However, time spent on routine or ordinary tasks were only allowed to be billed at the low rate figure. As stated in the *Johnson* case:

"the instruction is that the trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. It is appropriate also to distinguish between legal work in the strict sense and investigation, clerical work, compilation of facts and statistics, and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it."

*Johnson v. Georgia Highway Express Co.*, Opinion on Rehearing, Fee for Attorney for Receiver-Trustee, May 11, 1978, *cited at In re U. S. Golf Corp., supra*, 639 F.2d at 1202. Further, in this case, the Court applied this two-tier rate approach to the paralegal time billed by the firm of Webster & Sheffield. If the work performed by the paralegal (i. e., a LEXIS search) involved legal research, full time was allowed. However, if what the paralegal was doing involved items such as filing, answering phone calls involving questions about claims, etc., then this Court only allowed billing at the lower rate.[3]

2. *The novelty and difficulty of the questions.*

While liquidation of an estate does not appear on its face to be a particularly novel or difficult area of the law, in this case the Court finds that because of the size and amount of assets, many difficult issues had to be resolved before the assets could be liquidated. Probably one of the most difficult questions that had to be resolved involved the question of what assets belonged to Auto-Train. This involved spending time researching and in some instances litigating the questions of liens, priorities, and security interests. Further, there were issues that involved relatively difficult questions of law.

3. *The skill requisite to perform the legal service properly.*

Bankruptcy law is a particularly complex area of the law. Both the trustee, the firm

2. "(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, three percent on any amount in excess of $3,000 but not in excess of $20,000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." ...

"(c) If more than one person serves as trustee in the case, the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be." ...

3. Since a trustee is required under 11 U.S.C. § 704(6) to answer questions regarding claims of creditors, ordinarily only the trustee could recover a fee under the trustee's percentage basis for this service. However, since this case involved voluminous calls and correspondence from creditors that had to be dealt with, and physically it would be impossible for the trustee alone to answer such questions, this Court allowed the paralegals who handled the calls or correspondence to bill at the low rate figure for this service.

of Webster & Sheffield and the firm of Docter, Docter & Salus are particularly seasoned veterans in the bankruptcy field. The liquidation phase of this case required that counsel be attorneys who were familiar with the Bankruptcy Code. The potential of assets being sold at rates far below their liquidation value is always a possibility if inexperienced people liquidate the estate. Also, the attorneys had to liquidate within the bounds of the Bankruptcy Code, so they had to be experienced practitioners familiar with the limitations and scope of the Code. Further, this case was particularly difficult in that it was the first railroad liquidation under the new Code.

4. *The preclusion of other employment by the attorney due to an acceptance of the case.*

It is clear from the time records and the hours expended that a substantial number of the attorneys from Webster & Sheffield, as well as Charles Docter from the firm of Docter, Docter & Salus were precluded from working on any other case during the time of Auto-Train's liquidation. This factor was considered in determining the hourly rate.

5. *The customary fee.*

Based on the experience of the Court, the customary fee in a bankruptcy case ranges anywhere from $50.00 an hour for a relatively simple case to $150.00 an hour for a very complex case. Based on this fact, the Court has allocated each attorney a different fee based on his or her experience, and has further considered the usual and customary hourly rates assessed in reorganization cases in contiguous Metropolitan areas.

6. *Whether the fee is fixed or contingent.*

There is no agreement or court order allowing the attorneys a contingency fee. As this is a bankruptcy proceeding, the fee is to be one fixed by this Court.

7. *Time limitations imposed by the client or other circumstances.*

Time limitations were placed upon the attorneys in this case as they sought to sell the assets with the greatest of speed within the proscriptions of the Code so as to maximize the benefits to the estate. For example, security guards guarding the assets and rent on both offices and warehouses where assets were located were accruing daily. In addition, the lease for the Auto-Train office was up in July, 1981. Further, daily rent was being charged on the assets in the custody of the auctioneer. In addition, because of the demands of numerous secured creditors, the issue of security interests had to be litigated before the assets could be disposed of.

8. *The amount involved and the results obtained.*

The trustee has recovered to date in the approximate range of $731,000 (*See* Trustee's Report filed October 23, 1981) for this estate. Further, it appears that if all assets are sold as planned, that by early December of 1981, approximately 1.8 million will have been recovered. The trustee further had defeated claims in this case which resulted in a substantial benefit to the other creditors. In addition, many potential claims were averted by settlements also resulting in a benefit to the estate.

9. *The experience, reputation, and ability of the attorney.*

The attorneys from both the firms of Webster & Sheffield and Docter, Docter & Salus who worked on the case are particularly experienced in the bankruptcy area. For example, both Charles Docter and Murray Drabkin are experienced and well-known bankruptcy attorneys in the District of Columbia. Further, Murray Drabkin enjoys a national reputation in the bankruptcy field.

10. *The "undesirability" of the case.*

This factor does not seem to be applicable in this case.

11. *The nature and length of the professional relationship with the client.*

Prevailing hourly rates for legal services in this area and for the contiguous Metro-

politan area; namely, Virginia and Maryland, vary from $50 to $150.

The Court finds that a reasonable fee for the firm of Webster & Sheffield for the time period of May 4, 1981 to August 31, 1981 for services expended to that date is $144,067.41. A reasonable fee for the firm of Docter, Docter & Salus for the same time period is Thirty-three thousand, five hundred eighty-eight dollars and fifty-five cents ($33,588.55). The figure represents a total disallowance of the billing for LEXIS service as it is considered by this Court an expense of doing business. Further, for the reasons stated in this Memorandum Opinion, the total compensation and hourly rates were reduced as follows: [computations omitted by publisher].

It is therefore found by this Court that the fair and reasonable fee for the firm of Webster & Sheffield is One hundred forty-four thousand sixty-seven dollars and forty-one cents ($144,067.41) and that the fair and reasonable compensation to be awarded to Charles Docter is Thirty-three thousand five hundred eighty-eight dollars and fifty-five cents ($33,588.55).