**In re CLASSIC ARMS INTERNATIONAL, LTD., a/k/a Classic Manufacturing Corp., Bankrupt.**

**Bankruptcy No. 77 B 3272 (CHG).**

United States Bankruptcy Court, E. D. New York.

Oct. 8, 1982.

---

Finkel, Goldstein & Berzow, New York City, for bankrupt.

Charles Bornstein, New York City, trustee in bankruptcy.

Leon C. Marcus, P. C., New York City, for trustee in bankruptcy and for Official Creditors' Committee.

## MEMORANDUM

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court for consideration in this liquidation proceeding filed under Chapter XI of the Bankruptcy Act of 1898, as amended, are the applications for compensation of the trustee, of the attorneys for the trustee, and of the attorneys for the creditors' committee in the aborted Chapter XI proceeding which preceded the conversion of the debtor to straight bankruptcy.

The balance remaining in the general estate and available for distribution is $11,845.48. Deducting the charges to the Referee's Salary and Expense Fund leaves a balance of $10,517.61. The trustee is asking $745.67; the attorneys for the trustee, $8,000 plus $93.12 for expenses; and the attorneys for the creditors' committee, who are the same persons as the attorneys for the trustee, are requesting $2,500. The total amount requested exceeds the entire general estate available for distribution to creditors. At the final meeting of creditors, no one appeared in opposition to these allowances.

The bankrupt, Classic Arms International, Ltd., a/k/a Classic Manufacturing Corp. ("Classic"), originally filed under Chapter XI on December 21, 1977. It described its business as the manufacture and distribution of replica antique firearms and trophy belt buckles. The formal meeting of creditors on January 23, 1978, both of which meetings were attended by the firm of Marcus & Angel (now Leon C. Marcus, P. C.), which was retained by the official creditors' committee when it was formed. Approximately one-third of the time for which Marcus & Angel seek compensation as attorneys for the creditors' committee is based on their attendance at these two meetings and the submission of the necessary papers to the Court authorizing their retention.

In February, 1978, the facility operated by the bankrupt in Lynbrook, New York, was destroyed, precluding any possibility of rehabilitation, and the bankrupt consented to adjudication on March 9, 1980.

When the bankrupt was adjudicated, Charles Bornstein was appointed trustee, and he retained Marcus & Angel as his attorneys. They immediately entered into negotiations with counsel for the secured parties, which held liens on what assets of the bankrupt remained, to try to salvage some money for the estate. A settlement was worked out which was approved by the Court after hearing. The secured parties agreed to pay 5 percent of the net proceeds of the sale of the bankrupt's assets and the collection of its post-Chapter XI accounts receivable to the trustee, plus $250 for the trustee's interest in the name "Classic Arms International, Ltd." As a result of this settlement, the estate received $5,263.65 from the collection efforts of the secured creditors.

The bankrupt also asserted a claim against Eagle Star Insurance Company for the destruction of its inventory and the interruption of its business. The claim was

opposed by the insurance company which, according to Marcus & Angel, "expressed extreme doubt as to the veracity of the principals and the valuation of the assets." Furthermore, all the information relating to the destroyed assets had to be reconstructed because the records had been destroyed. The settlement of the claim apparently netted $3,200 to the estate.

Money was also recovered in a cause of action against Chemical Bank, which only realized $600, however, because Bankers Trust Company had a valid security interest in the monies which were the subject of the cause of action.

Marcus & Angel, in support of their application for attorneys' fees, point out that virtually the entire estate on hand was created by their efforts and ingenuity; that they were able to cause the secured parties to pay the estate approximately $5,500, to obtain $600 from Bankers Trust Company, and to receive $3,200 for assisting in the recovery of monies from the insurance company.

The attorneys for the trustee point to other services they performed: they arranged for the surrender of certain leased equipment; they examined the principal of the bankrupt; they reviewed all claims filed in the proceeding; communicated through correspondence and telephone calls with individual creditors. According to a time log which the attorneys for the trustee have annexed to their petition, they have expended approximately 88 hours of time on this matter. As attorneys for the creditors' committee, they have expended 26.5 hours.

Marcus & Angel state that their normal billing rate for their work as attorneys for the trustee would result in a total time charge of approximately $11,000, but in view of the size of the estate, they are requesting only $8,800, plus $93.12 for their disbursements. As attorneys for the creditors' committee, they say their normal time charges would result in a request for fees in the sum of $4,000, but bearing in mind the principle of economy of administration, they are seeking only $2,500.

## DISCUSSION

It is always an unhappy circumstance where a bankrupt estate turns out to be so small as to be incapable even of discharging the unavoidable costs of liquidation. Were the Court to allow the amounts requested in full, nothing would be left to pay even administration claims, which total over $9,000.

As Marcus & Angel note in their application for allowance as attorneys for the creditors' committee, Bankruptcy Rule 219(c), entitled "Factors in Allowing Compensation," provides that the compensation allowable to attorneys "shall be reasonable, and in making allowances, the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interest of creditors." The Advisory Committee's Note quotes from *In re Paramount Merrick, Inc.,* 252 F.2d 482, 485 (2d Cir. 1958), that "[t]he principal factors which enter into a determination of what is reasonable are the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results obtained and the 'economic spirit' of the Bankruptcy Act to curtail unnecessary expenses."

Of these factors, one of the most important is the "size of the estate." The Second Circuit said as much in *Rosenberg v. United States,* 242 F.2d 141, 142 (2d Cir. 1957), when it approved reductions in allowances made by the District Court, saying:

> "Even though these professional services were well-performed and helpful, we think the only realistic course in bankruptcy collections is that allowances must be limited—as they are by customary practice—to a reasonable percentage of the recovery."

Even assuming that the entire estate was created by the efforts and ingenuity of counsel, that would not constitute sufficient grounds for awarding them virtually 100 percent of the estate, as they request. Accepting the claim that the estate is due

entirely to the efforts of attorneys, the objective of their efforts is defeated if nothing is left for creditors. No more than half the funds recovered should go to attorneys, at the maximum. It is pertinent that all the monies were apparently recovered without any litigation: the time charges show no pleadings and few legal papers other than the preparation of a few orders. Most of the time is accounted for by telephone calls and letters. Each telephone call is recorded as requiring a full quarter hour, suggesting a mechanical, but not necessarily accurate, record of actual time spent. Evaluating all the criteria named in *In re Paramount Merrick, Inc., supra,* it seems to this Court inappropriate to allow any more than $5,000 to Marcus & Angel on behalf of their services to the trustee. They are, of course, entitled to reimbursement for their expenses.

With respect to their services as attorneys for the creditors' committee, which consists mostly of matters preliminary to the rehabilitation proceeding that never got off the ground, $1,000 appears to be adequate.

In view of the small size of the estate, the trustee is allowed no more than $500 for his services.

As the Court indicated earlier, it is unfortunate that the size of the estate precludes compensating the attorneys in accord with the charges they would normally make, but the creditors who extended credit to the bankrupt during the period of administration are entitled to some consideration.

An Order of Distribution consistent with this Memorandum will be entered herein.