**In re SHADES OF BEAUTY,
INC., Debtor.**

**Bankruptcy No. 182–12125.**

United States Bankruptcy Court,
E.D. New York.

Jan. 23, 1986.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

The trustee has collected total receipts of $22,562.09 which appear to be the proceeds generated from a sale of the debtor's assets, accounts receivable, turnover of funds from the debtor's bank account, and interest earned by the trustee thereon. He seeks the maximum statutory commission of $831.24 which is hereby allowed pursuant to 11 U.S.C. § 326(a).

The trustee's attorney, retained pursuant to an Order dated August 26, 1982, also seeks compensation in the nature of professional fees. The attorney's application documents some 44.65 hours spent on this matter. Unfortunately, the application is almost completely devoid of information which would warrant the award of any fee.

## DISCUSSION

In passing upon attorneys' applications for allowances, the Bankruptcy Court must answer three questions:

1. Are the services which are the subject of the application properly compensable as legal services?

2. If so, were they actual and necessary?

3. If so, how will they be valued?

## I. PROPERLY COMPENSABLE LEGAL SERVICES.

 An attorney is never entitled to professional compensation for performing duties which the statute imposes upon the trustee. *See e.g. In Re Mabson Lumber Co., Inc.*, 394 F.2d 23, 24 (2d Cir.1968); *In Re Harman Supermarket, Inc.*, 44 B.R. 918, 920 (Bkrtcy.W.D.Vir.1984); *In Re Auto Train Corp.*, 15 B.R. 160, 161 (Bkrtcy.D.C.1981). The function of an attorney for the trustee is to render to the estate those services which cannot and should not properly be performed by one who does not have a license to practice law. *See In Re Meade Land & Development Co., Inc.*, 527 F.2d 280, 284–85 (3d Cir. 1975). *See also House Report* No. 95–595, 95th Cong., 1st Sess. 328–29 (1977); *See*

*Senate Report* No. 95–989, 95th Cong., 2d Sess. 39 (1978), U.S.Code Cong. & Admin. News 1978, 5787. Although many trustees are attorneys at law admitted to practice in the jurisdiction in which they are residing, the allowance of statutory commissions for a trustee does not contemplate the trustee's rendering legal services.

The services that a trustee performs for an estate without the aid of counsel are compensable under Section 326 of the Code, while legal services rendered either by the trustee or his retained counsel are compensable under Section 328.

[Where the Bankruptcy Court] has authorized a trustee to serve as his own attorney, the trustee is entitled to compensation as an attorney only to the extent that the trustee performed services as an attorney and *not for performance of any of the trustee's duties* that are generally performed by a trustee without an attorney's assistance. *In re Whitney*, 27 B.R. 352, 353–54 (Bkrtcy.D.Me.1983) [Emphasis added], 11 U.S.C. § 328(b).

The demarcation between trustee services and attorney services should be clear and distinct. The specific subject matter and the nature of the problem that implicates legal services should be made apparent from the records.... In order for a trustee who retains himself as attorney for an estate to recover for legal services performed, as distinguished from the trustee's statutory duties, the attorney must establish that the services claimed are not those generally performed by a trustee without the assistance of an attorney. *In re Minton Group Inc.*, 33 B.R. 38, 40 (Bkrtcy.S.D. N.Y.1983).

 While it is sometimes difficult to distinguish clearly between these capacities, the threshold question should be whether the services performed were those which one not licensed to practice law could properly perform for another for compensation. While this Court will attempt to resolve all reasonable doubt in favor of the attorney, it is the burden of the applicant to demonstrate that the services for which

professional compensation is sought involve some legal service beyond the scope of the trustee's statutory duty. *In Re Four Star Terminals, Inc.*, 42 B.R. 419, 429 (D.Alaska, 1984); *Matter of Interstate Stores, Inc.*, 437 F.Supp. 14, 17 (S.D.N.Y. 1977).

## II. NECESSARY AND ACTUAL SERVICES.

■■■■ Once it has been established to the Court's satisfaction that the services for which compensation is to be awarded were properly compensable, the court should next determine whether or not the services for which compensation is sought were "actual and necessary." *In Re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985); *Matter of Liberal Market, Inc.*, 24 B.R. 653, 658 (Bkrtcy.S.D.Ohio 1982). Detailed timesheets establish the "actual"; while an accompanying explanation of the "how" and "why" establishes the "necessary."

"A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended, and expenses incurred, and (2) the amount requested." Bankruptcy Rule 2016.

If the scheduled service is a letter or a telephone call, the identity of the person addressed and an indication of the subject of the communication should be set forth. *See e.g. Cohen & Thiros v. Keen Enterprises*, 44 B.R. 570, 573 (N.D.Ind.1984); *In Re Doyle-Lunstra Sales Corp.*, 19 B.R. 1003, 1006–7 (D.S.D.1982); *Matter of Dee's Resort Wear, Inc.*, 25 B.R. 591 (Bkrtcy.M.D.Fla.1982).

■■■ Since "Time actually expended is not necessarily time reasonably expended", *Matter of Boston and Maine Corp.*, 46 B.R. 990, 993 (D.Mass.1985), in order to permit the court to evaluate the application properly, it should contain the following: a statement explaining the significance of each item of professional service for which compensation is sought, as well as an explanation of the purpose, necessity and appropriateness of each such service; a statement of the effectiveness of each such item; a statement of what alternatives were considered by the attorney together with the method of analysis relied upon for choosing the action taken; a statement of any difficult or unusual problems which arose in the case and the manner in which they were addressed and if the attorney believes his services are worth more than their mere time value, a statement setting forth the reason[s] therefore. *In Re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 581 (Bkrtcy.Utah 1985).

■■■ The Order authorizing an attorney's retention is not a carte blanche invitation to deplete the estate by the payment of legal fees. To avoid the temptation of rendering and then billing for services which may not be necessary and appropriate, before performing any service, the attorney must scrupulously weigh and be prepared to defend the propriety of each task for which he will be seeking compensation. *See In Re Albert Bros. Contractors, Inc.*, 27 B.R. 586, 591 (W.D.Va.1983). To undertake a thorough analysis, an attorney must consider the following questions: are the contemplated services appropriate in view of the size of the estate, *In Re Classic Arms Intern. Ltd.*, 23 B.R. 489, 491–92 (Bkrtcy. E.D.N.Y.1982); if the contemplated services are rendered successfully, is there a reasonable likelihood that there will still be a net benefit to the estate after professional fees are paid; is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery; to what extent will the estate suffer if the services are not rendered; to what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully? Such an analysis is a necessary part of any professional fee application. *See In Re Stewart*, 10 B.R. 472, 473–77 (Bkrtcy.E.D.Va. 1981). The extent to which applications for professional allowances address these criteria is often an indication of the extent, or lack thereof, of the applicant's experience

and abilities in the matter under consideration.

## III. THE EXTENT OF COMPENSATION

11 U.S.C. § 330(a) provides:

> After notice and a hearing, and subject to sections 326, 328 and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
>
>> (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title; and
>>
>> (2) reimbursement for actual, necessary expenses.

> \* \* \* \* \* \*

To determine the number of hours 'reasonably' spent, as well as in setting a 'reasonable' hourly rate, a court must review the work to see whether 'counsel substantially exceeded the bounds of reasonable effort,' *Pilkington v. Bevilacqua*, 632 F.2d 922, 925 (1st Cir.1980), and should disallow hours that were 'duplicative, unproductive, excessive, or otherwise unnecessary,' *Grendel's [Den, Inc. v. Larkin]*, 749 F.2d [945] at 950 [(1st Cir.1984)] *See also Hensley [v. Eckerhart]*, 461 U.S. [424] at 434, 103 S.Ct. [1933] at 1939–40 [76 L.Ed.2d 40 (1983)]; *Wojkowski [Wojtkowski] v. Cade*, 725 F.2d 127, 130 (1st Cir.1984). *Boston and Maine Corp. v. Moore*, 776 F.2d 2, 7 (1st Cir.1985).

■ The term "cost of comparable services" does not mean the usual hourly billing rate of the applicant. If it did, an attorney could command from the estate any desired hourly rate merely by adopting that rate as his "usual and customary rate." The term "cost of comparable services" means that fee which is customarily charged in the local community by someone who possesses similar skill, experience, expertise, stature and reputation who is faced with similarly novel and complex issues and who procures comparable results.

■ In order to enable the court properly to evaluate the "cost of comparable services", the applicant must provide the court with sufficient information for it to make an informed, well-reasoned determination. *See In Re Lafayette Radio Electronics Corp.*, 16 B.R. 360 (Bkrtcy.E. D.N.Y.1982). It is the applicant's burden to establish the value of his services. *Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1207 (5th Cir.1981). This court will then determine what is the reasonable amount of time an attorney should have to spend on a given project. Without such a determination an inept attorney could earn more than the skillful, efficient practitioner solely due to the additional time he needs to obtain the same result. *In Re Chriss*, 38 B.R. 655 (Bkrtcy.S.D.N.Y.1984); *In Re Int'l Coins and Currency, Inc.*, 26 B.R. 256, 262 (Bkrtcy.D.Vt.1982). In effect, the attorney would be rewarded for inefficiency. This should never happen. *See In Re Byman Furniture & Interiors, Inc.*, 14 B.R. 230 (Bkrtcy.S.D.Tex.1981). *Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1207 (5th Cir. 1981).

Prior to the adoption of the 1978 Code, case law had established a "standard of economy" as one of the criteria for the fixing of professional fees. *See* cases cited in 3A *Collier on Bankruptcy*, ¶ 62.12[5] at 1483 (14th Ed. 1975). The statutory criteria of "the cost of comparable services" contained in 11 U.S.C. § 330(a)(1) does not completely abrogate this standard. *In Re Neibart Associates Press, Inc.*, 58 B.R. 212, 216 (Bkrtcy.E.D.N.Y. 1985). "Economy in administration is still a basic objective under the Code which means the services must be 'actual' and 'necessary'". *In Re Four Star Terminals, Inc.*, 42 B.R. 419, 429 (Bkrtcy.D.Ala.1984).

■ It is a well-settled basic rule of statutory construction that a statute

changes pre-existing case law only to the extent that it is specifically inconsistent therewith. *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 304–5, 79 S.Ct. 766, 770–71, 3 L.Ed.2d 820 (1959) (citing *Shaw v. Railroad Co.*, 101 U.S. (11 OTTO) 557, 565, 25 L.Ed. 892 (1979)). While the "cost of comparable services" criteria of 11 U.S.C. § 330(a)(1) redefines the measure by which necessary and appropriate services would be compensated, it leaves in effect the standard of economy as a criteria for determining whether or not the services were in fact necessary and appropriate. It is not now, nor has it ever been, the law that an attorney will be compensated for rendering unnecessary and inappropriate services. *In Re Sapolin Paints, Inc.*, 38 B.R. 807 (Bkrtcy.E.D.N.Y. 1984).

A debtor's estate is entitled to the same quality of representation as any other client. Private clients may zealously protect their pocketbooks by scrutinizing the legal services which their attorney seeks to perform. When the client is the debtor's estate, this protective function is exercised by the court. In a judicial environment, however, the relationship between the one who approves payment and the provider of legal services is somewhat different from that relationship in the private sector. In the private sector the review often precedes the performance, whereas in the judicial sphere the reviewer always had the benefit of hindsight. The attorney must therefore realize that it is in his own best interest to weigh very cautiously the propriety of those activities for which he will ultimately seek compensation before those services are actually rendered. By proceeding carelessly, he proceeds at his own peril.

■ There is, however, another side of this coin. The interests of effective bankruptcy administration require that professional fees be designed not only to discourage the incompetent, but also to encourage the competent. *In Re Yale Express System, Inc.*, 366 F.Supp. 1376, 1381 (S.D.N.Y. 1973). To achieve this end, compensation must be sufficient in amount to induce competent counsel to undertake the labors incident to an insolvency proceeding in reliance on the willingness of the court fairly and reasonably to fix a proper fee.

In short, those attorneys who competently performed necessary professional services and adequately demonstrate this to the court will then be awarded appropriate compensation.

## FINDINGS

Paragraphs 1 through 4 of the attorney's application are of a preliminary nature, setting forth the attorney's qualifications, his retention by the trustee and his background concerning the business of the debtor.

■ Paragraph 5 recites that the attorney examined the debtor's schedules and statement of affairs. The compilation of time records attached to the application lumps these items together with several other services that were performed by the attorney on the same day, making it impossible for the court to determine the precise amount of time spent in examining the filed schedules. However, the court notes that for a case of this type twenty minutes should be more than enough time for an attorney with the experience claimed by the trustee's attorney to examine a petition and schedules.

■ Paragraph 6 describes the attorney's inability to ascertain the nature and extent of the debtor's accounts receivable because the debtor's books and records were not made available to him. The court notes that such an examination is a duty of the trustee. 11 U.S.C. § 704; Bankruptcy Rule 2015. Only after the trustee has discovered the existence and identity of the accounts receivable, and has made a reasonable but unsuccessful attempt to collect them, does it become necessary for an attorney to examine them as a prerequisite to bringing an action.

■ Paragraph 7 of the attorney's application asserts that the petitioner expended a great deal of time and effort conferring with the landlord and his representatives in order to gain entrance to the debt-

or's premises. However, nowhere in the petition for allowance, nor in the schedules and exhibits annexed thereto, is there a sufficiently detailed recitation of exactly what the attorney did when attempting to gain access to the debtor's leased premises. Consequently, the Court is unable to determine which of these services were routine demands and negotiations which should have been performed by the trustee and which were legal services which should have been rendered by counsel.

■■■■ Paragraph 7 also states that the attorney conferred with other attorneys for secured parties, examined and analyzed all documentation concerning a secured claim in order to determine the extent and validity thereof, and that upon determining the validity of the security, obtained the secured party's permission to sell the secured property, free of liens, the same to attach to the proceeds of the sale. Although the determination of the validity of a security instrument is usually a legal question, the services of an attorney are necessary only when a trustee has some reason to question the validity of the loan or security interest. Since this application is silent as to any facts which might have prompted the trustee to question their validity, we are unable to conclude that any of the services listed in Paragraph 7 of the attorney's application were necessarily performed by him in his capacity as an attorney.

■■■■ Paragraph 8 recites that the attorney attended the auction, received and reviewed the auctioneer's report and arranged for payment to the secured party in full of its claim against the debtor. Again, these are services which would normally be rendered by the trustee and not by an attorney. Certainly if the trustee anticipates that legal problems will arise at the time of the sale, it may be appropriate to have his attorney in attendance; but in such a situation the application should make a factual showing of the necessity for such attendance.

■■■■ Paragraph 9 of the attorney's application details his efforts in obtaining documentation of the debtor's accounts receivable, contacting and making demands upon the accounts receivable and monitoring the levy and collection of the accounts receivable by the Internal Revenue Service in satisfaction of its lien against the debtor. Again, these services appear to be the trustee's duty rather than the attorney's. The attorney's application does not demonstrate why legal skills were required in order to perform duties which the statute imposes upon the trustee.

■■■■ Paragraph 10 of the application states that the attorney made a demand on Bankers Trust Company and The New Jersey Bank for an accounting and turnover of all funds held on behalf of the debtor, and subsequently prepared an application, order and issued a subpoena pursuant to Bankruptcy Rule 205(a) (now Bankruptcy Rule 2004(a)) and Bankruptcy Rule 9016 when the bank ignored his request. The application states that immediately thereafter, documentation concerning the debtor's accounts was turned over to the attorney and it does not appear that the examination was actually held. Although the demand for documentation was properly a duty of the trustee, *see* 11 U.S.C. § 704, when that demand was not complied with, the preparation of the application, order and subpoena for examination was certainly an appropriate legal activity. The compilation of time records indicates that the attorney spent one-half hour on this item, and therefore is entitled to be fairly compensated.

■■■■ Paragraph 11 of the application states that in addition to the legal services described above, petitioner prepared the usual and necessary applications, proposed orders and other documents required in the administration of this estate. Unfortunately, without a detailed statement of precisely what was done it is impossible for the court to determine which tasks were the trustee's responsibility and what additional problems warranted the utilization of legal expertise.

In order to give the applicant the benefit of this discussion, the court will give him thirty (30) days from the date of this Deci-

sion to file a new application for allowance. This Decision will, however, serve as notice to those attorneys practicing before this court of the manner in which future applications for professional allowance will be evaluated.