**In re Ronald W. COURSON and Virginia E. Courson, Debtors.**

**In re Raymond E. OULMAN and Madalyn M. Oulman, Debtors.**

**Bankruptcy Nos. X88–01660F, X82–03068F.**

United States Bankruptcy Court, N.D. Iowa.

Feb. 28, 1992.

See also 111 B.R. 809.

James H. Cossitt, Ames, Iowa, trustee.

## MEMORANDUM OF DECISION AND ORDERS

WILLIAM L. EDMONDS, Bankruptcy Judge.

In each of these chapter 7 cases, the matter presented is the amount of legal fees and expenses which should be awarded to the attorney for the trustee. In the Raymond and Madalyn Oulman case, the issue is raised by the attorney's objection to the trustee's final report. In the bankruptcy of Ronald and Virginia Courson, the attorney applies for fees as part of the trustee's final report. In each case, James H. Cossitt is the trustee and the attorney for the trustee. A joint hearing in these cases was held by telephone on November 27, 1991. James H. Cossitt appeared in Oulman as trustee and in Courson as applicant. Janet Reasoner appeared on behalf of the U.S. Trustee. The court now issues its decision which includes findings of fact and conclusions of law as required by Fed. R.Bankr.P. 7052.

## I. FINDINGS OF FACT

### A. *Case of Ronald and Virginia Courson*

This chapter 7 case was filed October 31, 1988. James H. Cossitt was appointed trustee. Cossitt sought and obtained his appointment as attorney for the trustee. On September 18, 1989, Cossitt, as attorney, filed an interim fee application. The court held a telephonic hearing on the application in conjunction with applications by the same attorney in other cases. At the hearing, the U.S. Trustee objected to certain of Cossitt's legal fees on the ground that some of the duties performed were those of the trustee. The attorney conceded that some of the objections were valid. However, others remained in dispute. These included whether the attorney should be compensated for preparing an "Application for Approval of Employment of Attorney", a "Motion and Notice of Compromise or Settlement of Controversy", and an "Order Directing Notice Mailing." In its order of February 2, 1990, the court concluded that the foregoing tasks were the responsibility of the trustee and that his attorney would not be compensated for accomplishing them. On September 17, 1991, Cossitt, as trustee, filed his final report and account which included attorney Cossitt's final fee application for work done subsequent to the court's interim award. The fee application requested payment of legal fees in the amount of $1,351.50 and reimbursement of expenses incurred on behalf of the estate in the amount of $80.90. Thus Cossitt seeks additional reimbursement and allowance totaling $1,432.40. The fee application includes the following entries relating to his interim fee application.

| Date | Description | Time | Amount |
|------|-------------|------|--------|
| 9/15/89 | Prepare fee application for attorney fees and related affidavits, etc. | .70 | $59.50 |
| 11/2/89 | Prepare order for Judge Edmonds re: Allowance of Interim Fees | .40 | 34.00 |
| 11/28/89 | Court appearance—conference calls (2) on Interim Applications for Attorney Fees with · | | |

| Date | Description | Time | Amount |
|------|-------------|------|--------|
| | Judge Edmonds and U.S. Trustee office (objector) | .20 | 17.00 |
| 1/15/90 | Prepare Brief re Compensation for Attorney for Trustee ... | .50 | 42.50 |
| 1/16/90 | Revision of Brief re Application for Allowance of Attorney Fees | .40 | 34.00 |
| 1/17/90 | Revision of Brief in Support of Interim Fee Applications | .20 | 17.00 |

The foregoing entries are the only ones at issue in the pending application. They total 2.4 hours. The application also requests reimbursement of expenses relating to the interim fee application:

| | | |
|--|--|--|
| 12/28/89 | Court appearance—conference calls (2) | 7.00 |
| 1/17/90 | Photocopying—13 copies and postage for brief on administrative expenses | 3.75 |

The above-referenced entries total $204.00 in fees and $10.75 in expenses. The January, 1990 time entries are part of a pro-ration among several cases which were the subject of the court's order of February 2, 1990. In addition to the foregoing entries, Cossitt seeks compensation for 13.5 other hours and $70.15 in other expenses, none of which is disputed.

## B. *Raymond and Madalyn Oulman*

The Oulman bankruptcy was filed as a chapter 11 case in 1982, and was converted to a case under chapter 7 in July, 1988. Cossitt was appointed trustee. He was appointed as attorney for trustee in January, 1989. On September 18, 1989, Cossitt, as attorney, filed an interim fee application. The court held a hearing on the application in conjunction with applications by the attorney filed in other cases. At the hearing, the U.S. Trustee objected to compensation for the attorney for performing certain of the trustee's responsibilities. At the outset, the attorney conceded that certain objections were valid. Other objections remained in dispute. These included whether the attorney should be compensated for preparing an "Application for Approval of Employment of Attorney ...", a "Notice and Report of Sale of Property Over $1,500.00", and an "Application for Approval of Employment of Accountant...." In an Order issued February 2, 1990, the court ruled that the attorney would not be compensated for the preparation of the foregoing documents. The remainder of Cossitt's request was allowed. On July 11, 1990, Cossitt, as trustee, filed his Final Report and Account in which he listed as an administrative expense the amount of the interim fee award. He amended his final report on October 4, 1991 omitting any reference to the interim fee award, presumably because it had been paid. However, attorney Cossitt filed an objection to the amended final report on the ground that it failed to provide compensation for services rendered by Cossitt subsequent to the interim award. Inasmuch as Cossitt the trustee and Cossitt the attorney are the same person, this objection is apparently a procedural method chosen by Cossitt to obtain compensation for legal fees which he failed to request as an attorney and which, as trustee, he omitted from the amended final report. As an attachment to his objection, attorney Cossitt provided Exhibit 1 which includes these entries for the additional time and charges:

Fees:

| Date of Transaction | Hours Charged | Rate Charged | Amount of Transaction | Transaction Description |
|---|---|---|---|---|
| 11/2/89 | .40 | 85.00 | 34.00 | Prepare Order re Interim Attorney Fees |
| 11/28/89 | .20 | 85.00 | 17.00 | Court appearance—conference calls (2) on Fee Applications |
| 1/15/90 | .50 | 85.00 | 42.50 | Prepare Brief re Compensation for Attorney for Trustee  .. |
| 1/16/90 | .40 | 85.00 | 34.00 | Revision of Brief re Application for Allowance of Attorney Fees ...................... |
| 1/17/90 | .20 | 85.00 | 17.00 | Revision of Brief in Support of Interim Fee Applications  .. |
| 9/11/90 . | .40 | 85.00 | 34.00 | Court appearance—objection to Final Report |
| 9/11/90 | 1.60 | 85.00 | 136.00 | Travel to Mason City and back ......................... |
| 12/20/90 | .20 | 85.00 | 17.00 | Court appearance—telephonic status conference re objections to final report |

Disbursements:

| | | | | |
|---|---|---|---|---|
| 11/28/89 | | | 7.00 | Court appearance—conference calls (2) |
| 1/17/90 | | | 3.75 | Photocopying—13 copies and postage for Brief on Administrative Expenses |
| 9/11/90 | | | 47.50 | Travel to Mason City and back |

The time charges total $331.50; expenses total $58.25. Only time charges and expenses relating to the interim fee application are at issue.

C. Findings applicable to both cases

When working on legal matters, Cossitt keeps time sheets on which he enters, by date, the name of the client, a description of the work being done and the amount of his time. In recording bankruptcy work, his entries are more detailed than for other work. The time it takes him to make such entries is part of the time recorded. The information is entered into the firm's computer billing system by a clerical worker. From the information fed into the computer, the office staff periodically generates a "work in progress report." The firm's billing system can generate such reports for any of the firm's clients. Normally they are produced only for clients in bankruptcy cases. These reports contain more information than is provided in a normal billing statement. An example of such a report is Trustee Exhibit 1. When a billing statement is prepared for a client, even when it relates to a bankruptcy case, less information appears. How much information goes on a client's bill can be determined by choices made on the computer. Therefore, each attorney in the firm can "tailor" his bills. Cossitt chooses to provide his bankruptcy and non-bankruptcy clients with detailed explanations of the work done. Cossitt reviews each bill before it is mailed to the client. He does not charge his non-bankruptcy clients for such a review. He says that his review is more detailed for bankruptcy cases because of the rigorous requirements established for fee applications by the Bankruptcy Code and the court. Cossitt generally spends from 30 minutes to one hour reviewing the time charges in bankruptcy fee applications.

## II. DISCUSSION

■ The first issue presented to the court is whether the attorney is entitled to compensation for the preparation of his fee applications. At least two circuit courts have concluded that such compensation is justified.[1] District and bankruptcy courts are split on this issue. Some such courts allow no compensation; others permit compensation at regular hourly rates; and other courts permit compensation but with qualifications or limitations. The citations of such cases and their respective rationales are more than adequately set out in several articles and will not be repeated here. Ralph C. McCullough, II, *Attorneys' Fees in Bankruptcy: Toward Further Reform*, 95 Com.L.J., 133 (1990); James B. Hirsch, *Note, Bankruptcy Fee Applications: Compensable Service or Cost of Doing Business?*, 58 Fordham L. Review 1327 (1990); Keith J. Shapiro and Matthew E. Wilkins, *Selected Issues Regarding Professional Fees and Expenses in Bankruptcy Cases*, 1991 Ann Surv Bankr L 147, 208; Deborah D. Williamson and Lynnell Loke, *Compensation for Time Spent Preparing and Prosecuting Fee Applications*, 1991 Ann Surv Bankr L 285; Am. Bankr.Inst., *American Bankruptcy Institute National Report on Professional Compensation in Bankruptcy Cases* 194 (G.R. Warner Rep., 1991).

Proponents of compensation support it on the basis that fee applications are required in bankruptcy, that they are time consuming, and that it would be inequitable to require meticulous and often oppressive record keeping without compensation. Those who take the position that compensation ought not to be allowed generally do so on the basis that the application is not for the estate's benefit, but for the attorney's, and is part of his cost of doing business.

The leading case supporting compensation, and the one principally relied on by attorney Cossitt, is *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985). The only issues before the circuit court were wheth-

er the debtor's counsel in a chapter 11 case was entitled to compensation for preparing and for presenting the bankruptcy fee application.

The court first considered whether the preparation of the application was an "actual, necessary" service entitled to compensation under 11 U.S.C. § 330(a). It determined that it was:

> [t]he preparation of complex and burdensome fee applications is statutorily required of all counsel who seek compensation for the representation of debtors in bankruptcy. Detailed billing information is of importance to all parties, as well as to the court. Thus, the work involved in complying with those requirements constitutes "actual and necessary" services.

764 F.2d at 659. The court declared that it would be "fundamentally inequitable to impose substantial requirements on bankruptcy counsel as prerequisites to their obtaining compensation while simultaneously denying compensation for the efforts necessary to comply with those requirements." *Id.*

Having concluded that the preparation of a fee application was a "necessary service," the court considered whether it was "normally compensable." To answer that question, the court looked to comparable services for non-bankruptcy attorneys. It considered other areas of law where fees are awarded by statute, rejecting the notion that the fee application process was more similar to the billing of clients in private practice. It found the most similarity in the Civil Rights Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988. 764 F.2d at 660. The court observed that under that statute, courts have consistently awarded compensation for the preparation and litigation of fee requests. Failure to do so, the court said, would improperly dilute the fee award. 764 F.2d at 660.

The *Nucorp* decision also discusses the "common fund" cases in which attorneys are compensated from a fund for their efforts in creating the fund for the benefit of

---

**1.** *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985); *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088 (5th Cir.1980) (a case decided under the 1898 Bankruptcy Act, as amended).

others. These cases, however, do not permit compensation for the preparation and litigation of fee awards on the theory that the attorney's efforts to obtain the fee are in conflict with the interests of the fund beneficiaries and do not benefit them. *Id.* at 661. The Ninth Circuit distinguishes such cases saying that the purpose of compensation in the "common fund" cases is to prevent unjust enrichment which is not an issue in bankruptcy cases. Moreover, common fund fees are paid out of the recovery, whereas in statutory fee cases, the fees are in addition to the recovery.

The circuit concluded that the statutory fee cases provided the most similar comparison to the bankruptcy fee cases, because it was Congress' express directive in each to assure reasonable compensation to attorneys for all services rendered. The court acknowledged that the main difference in the two types of cases was the source of the fee payment but the court reasoned that there was no greater similarity in source between bankruptcy and the common fund cases. Although recognizing the source differences, the court decided that the statutory fee cases should be followed because their underlying policies most nearly paralleled those expressed in bankruptcy—to assure full compensation for handling cases. *Id.* at 662. That bankruptcy attorneys devote more time to fee application preparation than do attorneys seeking statutory fees was thought by the court to support further its determination. As in statutory fee cases, the court allowed compensation for time spent litigating fees to prevent dilution of the fee award.

The requirements for fee applications in bankruptcy are set out in Fed.R.Bankr.P. 2016(a). In pertinent part, the rule states:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a *detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.* An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

\* \* \*

(Emphasis added.) The Code itself does not specify what must be included in a fee application. However, 11 U.S.C. § 330(a) does establish the nature of compensation for professional persons, stating that the court may award "reasonable compensation for actual, necessary services rendered by such ... professional person ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title and ... reimbursement for actual, necessary expenses." The function of a professional is "to represent or assist the trustee in carrying out his duties." 11 U.S.C. § 327(a).

Having considered the statute and Rule, the case law, and its own knowledge regarding client billing, the court concludes that compensation of attorney Cossitt for the preparation of the fee applications in these cases is not warranted. Preparation of fee applications should not be compensated by the estate because the work is not, as presently required by the court, a normally compensable service, but is part of the attorney's cost of doing business. *In re Wiedau's, Inc.*, 78 B.R. 904, 909

(Bankr.S.D.Ill.1987); *In re Wilson Foods Corp.*, 36 B.R. 317, 323 (Bankr. W.D.Okla.1984). *See also, In re Kroh Bros. Development Co.*, 105 B.R. 515, 530 (Bankr.W.D.Mo.1989).

This ruling is not a significant departure from past practice in the northern district. I am not aware that prior to 1986–1987 attorneys were awarded fees by this court for preparation of fee applications. As an attorney, I was present in the bankruptcy courtroom on more than one occasion when the late Judge William W. Thinnes denied such requests, calling the applications a "labor of love." Although some attorneys since 1987 may have obtained awards for fee application preparation, it is likely so because the applications were unopposed and this judge did not raise the issue.

I disagree that the burdensome nature of fee applications requires compensation for their preparation in order to avoid inequity. It is true that Fed.R.Bankr.P. 2016(a) requires a detailed statement of the services rendered including the time expended and the expenses incurred. This court has not issued a decision setting out the parameters of an acceptable fee application under the rule.[2] The court receives a wide variety of fee applications ranging from well done to poorly done. Some are quite detailed, enabling the court to determine exactly what task was accomplished and in what amount of time. Others provide the court little help in understanding the task accomplished or its relationship to the case. Some applications make it almost impossible to determine from them whether the amount of time expended was reasonable for the task performed. Rarely, if ever, do these fee applications, regardless of their quality, draw objections. If the court considers a fee application to be lacking in sufficient detail, it generally sets a hearing to give the attorney the opportunity to explain the entries. Often the court has given a liberal reading to fee itemizations in awarding compensation. This court has also denied fees when time entries have been lumped together or when there is a

wholly inadequate explanation of the task performed. Based on the applications filed over the past five years and the awards that have been granted, I am unable to describe the attorney's task of itemizing time as one that is "oppressive", "burdensome", "complex", or "rigorous."

Unquestionably, rigorous application requirements exist in some courts. One illustration appears in the case of *In re Shades of Beauty, Inc.*, 56 B.R. 946 (Bankr. E.D.N.Y.1986), *aff'd* 95 B.R. 17 (E.D.N.Y. 1988):

in order to permit the court to evaluate the application properly, it should contain the following: a statement explaining the significance of each item of professional service for which compensation is sought, as well as an explanation of the purpose, necessity and appropriateness of each such service; a statement of the effectiveness of each such item; a statement of what alternatives were considered by the attorney together with the method of analysis relied upon for choosing the action taken; a statement of any difficult or unusual problems which arose in the case and the manner in which they were addressed and if the attorney believes his services are worth more than their mere time value, a statement setting forth the reason[s] therefore.

56 B.R. at 950. According to the court, this portion of the application is an explanation of the necessity of the services rendered. Were this court in the future to require such detail, it also would consider compensation for compliance. However, it has not yet done so. The applications in these pending cases fall far short of meeting the demands outlined in *Shades of Beauty*. They are nothing more than computer billings generally describing the attorney's time entries.

Despite the reasoning of *Nucorp*, I view the requirement for a detailed itemization as nothing more than analogous to a so-

2. This has been done in the southern district by a joint decision of its judges. *Matter of Potho-* *ven,* 84 B.R. 579 (Bankr.S.D.Iowa 1988).

phisticated client's request that his attorney provide a detailed explanation of billings. It may be true that most often the consumer client of a lawyer has no specific requirements as to the type of bill he receives. Regularly this is left to the attorney. It is not necessarily true of more sophisticated commercial clients such as banks or insurance companies. Often they require the same specificity as set out in Fed.R.Bankr.P. 2016. From recent news articles, it appears that sophisticated consumers of legal services are beginning to employ fee auditors.

Nor is it this judge's experience that in the normal course of events, attorneys charge their clients for the preparation of their bills. In most cases, the bills are prepared by clerical personnel. *See, Great Western Savings v. Dominguez (In re Dominguez)*, 51 B.R. 171, 173 (Bankr. C.D.Cal.1985). In the Courson and Oulman cases, attorney Cossitt has included in his application the time spent in filling out his time entries. Once completed, however, this information is given to clerical personnel to put into the firm's computer billing system. Itemizations created thereafter are created by the computer although they are reviewed and edited by the attorney. However, such reviews seem to be a normal task in the billing process in the private practice of law. I would find it astonishing that a law firm would send a bill to any client without its being reviewed first by an attorney. The occasion of such a review would be the appropriate time for the attorney to make billing judgments as to the addition, deletion, or moderation of charges.

Although the fee application, as opposed to the attached itemization, may be prepared by an attorney, generally there seems nothing complex or difficult about its preparation. In these cases, the interim applications drafted by the attorney are only two pages each, and they are identical except for the captions and the dollar amounts. Even though prepared by an attorney, once one of them had been drafted, a clerical worker could draft future forms in different cases merely changing the caption and inserting new dollar amounts. Attorneys should not be compensated in each case for merely submitting a fee application which is nothing more than a form document adapted to the present case, especially when clerical personnel would appear competent to make the adaption.

I realize this decision is contrary to *Nucorp* and that *Nucorp* is probably the "prevailing wisdom" or the majority view at this time. But I respectfully disagree with *Nucorp's* position that the fee application process is not analogous to client billing.

I do not agree that the fee shifting cases in the area of civil rights are the appropriate model for determining whether the "service" is normally compensable. *Nucorp* states that the Bankruptcy Code and the fee shifting statutes have a similar goal—that fees are awarded pursuant to Congress' directive that attorneys be fully compensated for services provided. But the purpose of fee shifting in civil rights cases is not to ensure payment in full to the attorney. "The purpose of section 1988 is to encourage enforcement of the Civil Rights Acts by compensating those persons who bring meritorious actions. Such persons are thought to be advancing the public interest." *Pickett v. Milam*, 579 F.2d 1118, 1121 (8th Cir.1978). Making sure attorneys are fully paid may be only the means to that end. It seems then that the preparation and presentation of a fee application in a civil rights case serves the client in that it shifts the responsibility for the fee payment from the successful civil rights plaintiff to the losing defendant. In bankruptcy, there is no shifting at all. If the service is compensable, the estate pays it. If it is not compensable, it is not paid.

In summary, because this court considers the fee applications filed in these cases to represent the attorney's cost of doing business, the cost of preparing the fee applications will not be compensated by the estate.

■ The second question before the court is whether the attorney is entitled to compensation in presenting or defending the fee applications when either the court or a party-in-interest raises issues about

the appropriateness of payment or the sufficiency of the applications. *Nucorp* permits such compensation reasoning that if compensation is not allowed, it effectively reduces the compensation to which an attorney is entitled under § 330 of the Code. 764 F.2d at 662.

Prior to the hearing on interim fees, the attorney conceded that certain aspects of the interim application were not compensable. Other aspects remained in dispute, including whether compensation is permissible for an attorney who drafts or fills out the application to employ himself or another professional. Cossitt argues that on this issue he relied on district precedent[3] and thus he had a good faith belief that drafting the employment applications was compensable. He contends that a good faith belief in compensability should be the litmus test in the court's determination, not the outcome of the dispute.

The U.S. Trustee points out that there are *per se* rules which deny compensation to attorneys for opposing successful objections to fee applications. *In re Riverside–Linden Inv. Co.,* 111 B.R. 298, 301 (9th Cir. BAP 1990). The appellate panel in *Riverside–Linden* denied fees even though the objection was only partially successful. *Id.* at 301. The U.S. Trustee, however, argues for a more flexible rule, citing as an example *In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474 (Bankr.D.Utah, 1991). The court in *CF & I* permitted reasonable compensation for an attorney's fee presentation and defense even though the attorney was not completely successful. 131 B.R. at 488.

The court believes Cossitt had a good faith belief in the compensability of the work at issue. Were this court, as a general rule, to permit compensation for the presentation or defense of fee applications, it would likely opt for a flexible approach which considered the reasonableness of the attorney's position along with the outcome of the litigation. However, because the court believes that the fee application process is for the benefit of the attorney seeking compensation, the court concludes that the attorney should bear his own legal costs.

Looking at the question from the opposite perspective, the estate should not have to compensate the attorney for his defense of his fees merely because the court, the debtor, the U.S. Trustee, the trustee or another party-in-interest has legitimate questions or objections regarding those fees. This is not to say that attorneys will never be compensated for the presentation or litigation of fee applications. There may be occasions where extraordinary circumstances justify such awards or where they are necessary to prevent injustice. The court does intend to speculate as to the nature of such circumstances. Suffice it to say they are not present in these cases.

## CONCLUSIONS OF LAW

Attorney James H. Cossitt is not entitled to compensation from the estates of Courson and Oulman for the preparation and presentation of his fee applications of these cases.

## ORDER

IT IS ORDERED that judgment shall enter in the bankruptcy case of Ronald W. Courson and Virginia E. Courson that James H. Cossitt, attorney for the trustee, is allowed additional attorney's fees in the amount of $1,147.50 and reimbursement of expenses in the amount of $70.15. The balance of the attorney's application is denied.

IT IS FURTHER ORDERED that in the case of Ronald W. Courson and Virginia E. Courson, the final report is approved with modification to the trustee's application for legal fees contained herein; distribution may be made accordingly.

IT IS FURTHER ORDERED that in the case of Raymond E. Oulman and Madalyn M. Oulman, judgment shall enter that James H. Cossitt, attorney for the trustee, shall be allowed additional legal fees in the amount of $187.00 and reimbursement of expenses in the additional amount of

---

3. *In re Kiefer,* No. L86–01124C, slip op. at 3 (Bankr.N.D.Iowa, Sept. 9, 1988).

$47.50. The balance of the application for fees and expenses is denied.

IT IS FURTHER ORDERED that in the case of Raymond E. Oulman and Madalyn M. Oulman, the trustee shall file and serve an amended final report.

SO ORDERED.